# Farr, *et al. v.* Chambless.

## *Bill for Division and to Cancel Deeds.*

(Decided January 18, 1912.    57 South. 458.)

1. *Deeds; Delivery; What Constitutes.*—Although physical custody of the instrument is retained by the grantor a complete delivery of a deed is made by a grantor who parts with the control of the deed, or who does any act or says anything whereby he evinces an intent to part with control over it and pass it to his grantee.

2. *Same; Evidence.*—The evidence in this case examined and held to support a finding of a delivery of a deed.

3. *Same; Incompetency of Grantor; Evidence.*—An heir suing to set aside a deed of his ancestor on the grounds of insanity has the burden to show incompetency at the time of the execution of the deed, and where the evidence is about equally balanced the court will not set aside such a deed, especially where the justness of the transaction indicates a sound mind.

4. *Appeal and Error; Review; Separate Assignment.*—Where there is a severance in the assignment of error and error is separately assigned by those appellants prejudiced by the decree complained of, the decree will not be affirmed merely because some of the appellants are not prejudiced thereby.

APPEAL from Jackson Chancery Court.

Heard before Hon. W. H. SIMPSON.

Suit by J. L. Chambless against Martha E. Farr and others to set aside deeds and for a sale of lands for division. From a decree for complainant, defendants appeal. Reversed and rendered, dismissing complainant's bill.

The case made by the bill is that in October, 1907, one A. T. Chambless died intestate, leaving as his heirs the parties to this suit. It is alleged that there are no debts, and no need for an administration. It is further alleged that in his lifetime Chambless was seised and possessed of tracts of land (describing same), and that while so seised and possessed, in or about 1901 or 1902, he conveyed said land by deed to Martha E. Farr and

Geneva Chambless; but it is averred that whether the deed was ever delivered or not orators do not know, but they charge on information and belief that it was never delivered. It is further averred that, at the time of the making and signing of said deed, said A. T. Chambless was mentally incapable of making a deed, and that at the time said deed was made Chambless was old, was living with his daughter, and that the deed was procured by undue influence exercised over him by one of the grantees, Martha E. Farr. It is then alleged that after the preparation of that deed Geneva Chambless died and that in 1903 Martha Farr procured Chambless to execute an instrument in writing, in form a deed, purporting to convey to her the one-half undivided interest which he had previously conveyed to said Geneva Chambless, and that at or about the time of the execution of said deed A. T. Chambless and Martha E. Farr executed to George R. Chambless a deed attempting to convey 10 acres of said land to said Chambless off of a certain 40, and 32 acres off of another 40. It is alleged that at the time these deeds were made A. T. Chambless was very old and infirm, and was mentally incapable of making and executing a deed, and that he was never restored to sanity, but died wholly insane. Undue influence is also alleged as having been exercised over him by Martha Farr. The prayer is for a calling in and cancellation of these deeds, and for a sale of land for division among the joint owners thereof.

VIRGIL BOULDIN, for appellant. The parent and not the child is considered the dominant party, and the law will not presume undue influence in a conveyance from the parent to the child.—*Dolberry v. Dolberry,* 153 Ala. 434; *McLeod v. McLeod,* 145 Ala. 269. Under these

authorities the burden was on complainant to show
undue influence. The deed was delivered.—*Fitzpatrick
v. Brigman,* 130 Ala. 450; *Arrington v. Arrington,* 122
Ala. 510; *Strickland v. Griswold,* 149 Ala. 325. Coun-
sel indulges in a discussion of the evidence to show that
the burden was not properly carried.

W. H. NORWOOD, for appellee. Not all of the appel-
lants were prejudiced by the decree, and therefore, it
should be affirmed.—*Randolph v. Brewer,* 96 Ala. 193;
*Bedell v. Mfg. Co.,* 91 Ala. 325. Where insanity is
shown, it is presumed to continue, if it be general or
prominent.—*Pike v. Pike,* 104 Ala. 642; *Saxon v. Whit-
taker,* 30 Ala. 237. Undue influence is alleged and con-
fidential relations shown, and the burden was on the
grantees to show perfect good faith.—*Couch v. Couch,*
148 Ala. 332; *Harraway v. Harraway,* 136 Ala. 586;
*Walling v. Thomas,* 133 Ala. 490; *Burke v. Taylor,* 94
Ala. 530. The evidence does not disclose a delivery of
the deed.

ANDERSON, J.—In the case of *Gulf Red Cedar Co.
v. Crenshaw,* 169 Ala. 606, 53 South. 812, this court, in
discussing what would and what would not operate as
a delivery of a deed, among other things, said : "If, on
the other hand, he parts with the control of the deed, or
does any act, or says anything, whereby he evinces an
intention to part with the dominion over it and to pass
it to the grantee, though he may retain the physical
custody of the instrument, or whether it be turned
over to another or placed upon the record, the deliv-
ery is complete, if made with the intent that it was to
so operate, and regardless of what was said and done
in order to perfect same." See also, the cases of *Fitz-
patrick v. Brigman,* 130 Ala. 450, 30 South. 500; *Arring-*

*ton v. Arrington,* 122 Ala. 510, 26 South. 152; *Griswold v. Griswold,* 148 Ala. 241, 42 South. 554, 121 Am. St. Rep. 64.

In the case at bar, the only positive proof of a physical delivery by A. L. Chambless of the deeds to Martha Farr and George Chambless is the evidence of Martha, which should probably be excluded, under the statute, as a transaction by an interested person with the deceased; but with this evidence excluded there is an abundance of legal evidence which creates a reasonable inference of the delivery of said deeds. Martha is found in possession of them, and delivered them to George to be recorded; they were duly acknowledged, and were made at or about the same time as deeds to other children, which were delivered. There was nothing clandestine about the transaction, and the deeds were made by A. L. Chambless, pursuant to an often-repeated desire and intention to make an equitable disposition of his property between his children. He reserved a life interest in the lands deeded Martha, and attempted to deliver the deeds to his son, J. G. Chambless, to give to Martha and George after his death, and the son gave them back to him, and told him to take them and give them to Martha. The grantor made frequent declarations in the neighborhood, and to some of his sons and sons-in-law, that he had deeded the home place to Martha and the "Jack Patch" to George, stating, in effect, that they were made in order to give them an equitable interest in his estate, as compared with what he had previously advanced the complainant, and with the property that he had deeded to, or expected to deed to, the other children, and to further compensate them for their interest in their mother's estate, which had been consumed by him in providing for some of the other children. Taking all of the facts and surround-

ings into consideration, the most reasonable inference to be deducted therefrom is a delivery of the deeds made to Martha and George.

There was proof on the part of complainant that A. L. Chambless was insane when the deeds were made; but the burden was on him (the complainant) to establish insanity, and while the great weight of the evidence shows that the grantor was insane at or prior to his death, the respondents' evidence shows that the said grantor's mind did not become seriously impaired until he suffered a severe spell of sickness the fall succeeding the execution of the deeds, and that he was in a sound state of mind prior to said attack, and we are inclined to accept the respondents' theory, as the burden of proof was on the complainant, and the evidence is almost equally divided. Moreover, the equity and justness of the transaction bespeak the action and thought of a sound, rather than a diseased, mind. We also think the evidence is sufficient to refute the imputation of undue influence, regardless of the age of the grantor and the fact that he resided with his daughter. The deeds operated as an equitable division of his property, with perhaps, a slight preference, as to value, in favor of his youngest daughter, with whom he resided, but which said difference in value was in a measure offset by the reservation of a life estate in the land.

It is true there is a discrepancy in the testimony of Martha as to when she gave George the deed to have recorded; but the human memory is frail and inaccurate as to exact dates, and this said discrepancy is not sufficient to overcome the reasonableness and good faith of the transaction. Nor was the refusal of George to defend the case and testify sufficient to create the inference that the deeds were falsely or surreptitiously procured from the grantor. The suit was in Jackson coun-

ty, and ·as the lands are located in Marshall, George may have believed, as he contended, that the bill should have been filed where the lands were located.

It has been suggested in brief of appellee's counsel that this case must be affirmed upon the theory that some of the appellants were not prejudiced by the decree of the lower court, and in support of this contention he cites the case of *Rudulph v. Brewer,* 96 Ala. 193, 11 South. 314, and *Bedell v. Mortgage Co.,* 91 Ala. 325, 8 South. 494. These cases apply to a joint assignment of error when some of the appellants were not injured or prejudiced by the decree. In the case at bar, there is a severance in the assignment of error, and error is separately assigned by those who were prejudiced by the decree from which the appeal was taken.

The decree of the chancery court is reversed, and one is here rendered, dismissing the complainant's bill.

Reversed and rendered. All the Justices concur, except DOWDELL, C. J., not sitting.