(134 So. 662)

**DAWSON et al. v. J. A. LINDSEY & CO.**

8 Div. 145.

Supreme Court of Alabama.
April 23, 1931.

Rehearing Denied May 28, 1931.

170

Kirk & Rather, of Tuscumbia, for appellants.

A. H. Carmichael, of Tuscumbia, for appellee.

GARDNER, J.

The original bill seeks to have a deed declared a mortgage and the exercise of the equity of redemption. The deed was executed by complainant to J. A. Lindsey & Company April 23, 1921, conveying one hundred and twenty acres of land for a recited consideration of $3,000. It may be here added that J. A. Lindsey & Company was only J. A. Lindsey doing business under that name. In February, 1920, complainant had executed a mortgage to J. A. Lindsey & Company on the same land for advances, which was past-due and unpaid, and in February, 1921, a judgment was recovered against complainant in favor of the Decatur Fertilizer Company. The recited consideration of $3,000 was not paid. It represented complainant's account, and the deed recites: "The right of redemption of the above property is retained by the said J. T. Dawson until January first, nineteen hundred twenty-three, which J. A. Lindsey and Company agree to J. T. Dawson to pay all he owes them on two mortgages on this and W. D. Dawson's lands." On the same day the parties signed a separate agreement to like effect, giving complainant to January 1, 1923, to "redeem all lands sold J. A. Lindsey and Company to day and the purchase price of the lands ($3,000.00) is to apply on J. T. Dawson's debts and his accounts he is security for, all traded with J. A. Lindsey and Company in 1920."

The relation of debtor and creditor continued to exist, further advances made thereafter, and Lindsey had at that time cotton delivered on the indebtedness and yet unsold. It appears that a like arrangement had been made between these same parties in their dealings in previous years, and that complainant had paid the indebtedness and reinstated his title. The complainant's evidence tending to show this deed was intended as a mortgage is well supported by the writings above noted, and all the circumstances here shown.

Many of the authorities touching upon this question are noted in Fowler v. Haggins, 209 Ala. 176, 95 So. 816, and the principles therein found stated are well recognized and need no restatement here. Suffice it to say the evidence justifies the conclusion that the deed was intended as a mortgage, and complainant has the right to exercise his equity of redemption.

Indeed, we do not read the brief of counsel for the mortgagee to seriously controvert the above-stated conclusion, but it is sought to avoid the same on the theory of es-

toppel, in that it is insisted this same land was conveyed by the mortgagee to W. D. Dawson, the father of the mortgagor, at the request of the latter, and this brings us to the next question of importance in the case. Complainant insists that the land was never so conveyed for the reason that the deed to W. D. Dawson was not delivered. This transaction occurred April 14, 1922. Lindsey produces a deed executed by himself and wife to W. D. Dawson bearing this date, which purports to have been acknowledged April 18, 1922, four days after its execution. It was never recorded. The recited consideration was $3,000, which corresponds with that in the deed of complainant above considered. Lindsey & Company also offer a mortgage from W. D. Dawson executed to said company bearing the same date of the deed, April 14, 1922, embracing the same land in the deed of J. T. Dawson to Lindsey & Company, and additional land owned by W. D. Dawson alone. This mortgage purports to have been acknowledged before the same officer who took the acknowledgment to the deed, but the date of the acknowledgment on the mortgage is the same as the date of the execution of the deed. The recited consideration was $5,300, representing it seems the $3,000 purchase price of the J. T. Dawson land, $300 for the two mules, and $2,000 to secure any sum "J. T. Dawson might owe," and any amount he traded in 1922.

W. D. Dawson was over seventy-five years of age, and lived with his son J. T. Dawson, and the amount for the mules referred to in the mortgage, we think, clearly was on the son's account, as there was in fact no merchandise account against W. D. Dawson. Lindsey testifies that W. D. Dawson was security for "Tom"—referring to the son J. T. Dawson—and stated, "we were trying to work Tom out of debt." At whose instance these transactions occurred is difficult to determine. Both parties may have apprehended trouble with the recorded judgment to the fertilizer company, and Lindsey in the mortgage from W. D. Dawson obtained additional land as security for J. T. Dawson's indebtedness.

The foregoing outline suffices for a consideration of the question as to whether or not the deed to W. D. Dawson was delivered, which was of course essential to its validity as a conveyance of the property therein described. 18 C. J. 196.

W. D. Dawson testifies that he asked for the deed, and would never have executed the mortgage had he not understood the deed was to be turned over to him, but that Lindsey declined to let him have it. Lindsey admits Dawson "said something to me about delivering him the deed," but he did not let him have it, saying to Dawson, "You might lose this deed," and that he "would deliver the deed if he would pay taxes and recording fee"; that he wanted to "keep the deed to save the expense of this transaction." In concluding this particular part of his examination, Lindsey (Transcript, p. 242) made the statement: "What we expected was that Tom would work and pay for it." The deed never reached the grantee's hands, but remained in the possession of the grantors until offered in evidence in this case. True Lindsey says the grantee agreed to let him keep it for the reasons above stated, but we think all the evidence considered clearly shows Lindsey did not intend to lose dominion or control over the deed, but to hold the same awaiting further developments and to use as convenience or further safety might dictate. "The true test of delivery is not as to what was actually said or done or what became of the conveyance, but whether or not the grantor intended to reserve to himself the locus poenitentiæ. If he did, there is no delivery and no present intention to divest himself of the title to the property." Gulf Red Cedar Co. v. Crenshaw, 169 Ala. 606, 53 So. 812, 814. See, also, Bernheim v. Horton, 103 Ala. 380, 15 So. 822; Perkins v. Perkins, 206 Ala. 571, 91 So. 256; Farr v. Chambless, 175 Ala. 659, 57 So. 458; Culver v. Carroll, 175 Ala. 469, 57 So. 767, Ann. Cas. 1914D, 103; Vol. 10 Ala. & So. Dig. pp. 115-117.

The deed to W. D. Dawson, we conclude, never became effective as a conveyance for a want of delivery, and as this conveyance constituted the consideration of the mortgage of April 14, 1922, to Lindsey & Company by said Dawson, the mortgage also fails for want of consideration. There is nothing in the proof justifying a conclusion that the deed could serve or was intended to serve as a transfer of any mortgage of J. T. Dawson (Sadler v. Jefferson, 143 Ala. 669, 39 So. 380), and any such conclusion would run counter to the clear intention of the parties. The mortgage, therefore, for failure of consideration ceases to be an enforceable security. King Lumber Co. v. Spragner, 176 Ala. 564, 58 So. 920.

▮ The chancellor granted to Lindsey on his cross-bill relief by way of correcting a mistake in the description of the W. D. Dawson mortgage, but the mortgage conferring no rights cannot be made the basis for a bill of this character. Montgomery v. Perryman & Co., 147 Ala. 207, 41 So. 838, 119 Am. St. Rep. 61. There was therefore error in granting the relief on Lindsey & Company's cross-bill.

▮ On the contrary, relief should have been awarded W. D. Dawson on his cross-bill seeking the cancellation of his mortgage to Lindsey & Company of April 14, 1922. Nor should the original bill have been dismissed, as complainant is entitled to an accounting and the right to exercise the equity of redemption.

The original bill also sought to have canceled the mortgage referred to as the Trump-Curry mortgage,—this upon the theory that Lindsey & Company agreed to pay and satisfy the same and charge to complainant's account. Lindsey insists that this mortgage was past-due and the mortgagees pressing for collection, having placed it in the hands of an attorney for that purpose, and that he paid the amount due thereon and took a transfer thereof at complainant's request. The mortgage discloses the transfer. It embraces the same land in complainant's mortgage of 1920 to Lindsey & Company and other land in addition. Complainant insists the amount of the Trump-Curry mortgage formed a large part of the consideration of his 1920 mortgage, while Lindsey insists said mortgage had no relation to complainant's mortgage, but was separate and distinct, and that the consideration for complainant's mortgage of 1920 was for supplies.

The evidence in this record is voluminous and a detailed discussion thereof would serve no useful purpose. It has been read and examined with painstaking care, and we will rest content on the statement of our conclusions from a study thereof. We are persuaded Lindsey's contention in this regard is sustained by the weight of the evidence, and that the agreement was not that the Trump-Curry mortgage was to be canceled, but transferred as was in fact done. Complainant therefore is not entitled to a cancellation of this mortgage, and in the accounting to be had neither said mortgage indebtedness nor the payment made by Willis and credited thereon are to be considered.

Like observations are applicable to the Decatur Fertilizer Company's debt. Numerous items of the account of J. T. Dawson are contested. An accounting before the register will be here directed.

As one of the bases of this accounting, complainant insists that an agreement existed between himself and Lindsey to the effect the latter was to hold all cotton which was delivered and not to sell until ordered by him. On the other hand, Lindsey contends that the cotton was delivered with the understanding that Lindsey was to sell as his best judgment dictated, with the exception of a few bales of the last year which complainant requested be sold only at thirty cents per pound. The greater portion of the cotton brought much less than this price, and complainant attempts to charge Lindsey for the difference and obtain credit therefor. The evidence upon this issue is in sharp dispute, and in view of the accounting to be had we have thought it proper to state our conclusion thereof, which is that Lindsey did not agree to hold and sell only on the order of complainant, but the sale of the cotton was left to Lindsey's judgment with the exception of the few bales as above indicated.

We conclude therefore that upon the accounting the credits should be rested upon the amount and the price of the cotton as it was actually sold.

The decree rendered will be reversed, and one here entered granting complainant relief by declaring the deed executed by him to Lindsey & Company to be a mortgage and an accounting for the exercise of the equity of redemption, but denying relief for the cancellation of the Trump-Curry mortgage. A decree will also be entered denying relief to Lindsey on the cross-bill, and granting the relief of cancellation of the mortgage sought in the W. D. Dawson cross-bill. The decree here entered will further direct an accounting before the register to ascertain the sum due by J. T. Dawson to Lindsey & Company for indebtedness of himself and share croppers for whose advances he was responsible, and the accounting will be in accord with the views herein expressed, and the exhibits forwarded in the case to this court will be ordered returned to the trial court.

The decree is reversed, one here rendered, and the cause remanded.

Upon application for reconsideration of the cause, counsel for appellant state they desire also to exercise the equity of redemption as to the Trump-Curry mortgage. All parties are before the court, and we see no valid objection to an amendment to the bill seeking relief to that end. The order to that effect may be more properly entered before the chancellor. Upon perfection of the pleading in that regard the reference may also be so ordered as to include the matter of indebtedness upon said mortgage.

Reversed, rendered, and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.