20 So.2d 461

**MOTT v. HELMES et al.**

4 Div. 353.

Supreme Court of Alabama.

Dec. 14, 1944.

Rehearing Denied Jan. 25, 1945.

Sentell & Sentell, C. J. Kettler, Ben H. Lightfoot, and Horton H. Little, all of Luverne, for appellees.

Ball & Ball and Files Crenshaw, all of Montgomery, for appellant.

THOMAS, Justice.

The errors assigned challenged the sustaining of the demurrer to the bill of complaint to enforce a lien under the statute for sanitary extensions and improvements. The suit is not against the municipality but

against the property owners and lands indicated.

The bill of complaint was filed August 30, 1940, to enforce a lien arising from a public improvement assessment against certain property described in Exhibit "A" to the bill. The date of the first series of assessments declared upon is November 13, 1911. The date of the second series is alleged to be of date of November 20, 1911. No due dates are indicated in the pleading.

The averment of the bill as to the several amounts due on each of the series of assessments is "the amount of the assessment due thereon being the same as shown on 'Exhibit A' hereto annexed," and the material part of which is:

It may be further noted that the Exhibit "A" to the bill of complaint does not purport to be a copy of part of the assessment roll or book for local improvements, as asserted by the appellant's counsel. The body of the bill of complaint itself does not allege what Exhibit "A" is. The caption of Exhibit "A" reads as we have above indicated.

Section 1384, Code of Alabama, 1907, of force when the bonds were issued, provided that the Council shall proceed by order or resolution to fix "the amount of the assessment against each lot or tract of land described and included in said assessment roll, and all such assessments, *from the date of such order or resolution,* shall be and

"EXHIBIT 'A'
"Town of Luverne, Crenshaw County, Alabama
"Abstract of Sewer Assessments
"August 29th, 1940

| "Property owner at present time. | Unpaid balance of original assessment. | Description of property. |
| --- | --- | --- |
| I. R. Reddoch | $47.66 | One dwelling house and lot said lot being 343 feet front on north side of first street, 210 feet back, bounded on the east by Martin and Watson, and on the west by Dr. B. M. Kendrick. |
| I. R. Reddoch | $55.40 | One dwelling house and lot, said lot being 105 feet front on north side of first street, No feet back, bounded on the east by Dr. J. E. Kendrick and on the west by C. R. Bricken. |
| Max B. Folmar | $43.50 | One dwelling house and lot said lot being 105 feet front on north side of first street, No feet back, bounded on the east by Dr. B. M. Kendrick, and on west by Mrs. Lillie Williamson. * * *" |

This will illustrate the other assessments, names of parties, amounts due and properties for which default is claimed as against which the declared lien is sought to be enforced.

The sole averment as to the act of the town council in making each of the series of assessments indicated against the property is as follows:

" * * * The Mayor and Town Council of the Town of Luverne did by ordinance duly adopted fix the amount of the assessment against each of said lots as set out and described in an 'Assessment book for local improvements.' "

constitute a lien on the respective lots or parcels of land * * *." [Italics supplied.]

The term "date of assessment" is used in Sections 1401 and 1402 of the Code of 1907 to mean the date on which the Council fixed the amount of the assessment against each lot by due order or resolution after the prescribed notice required by Section 1384 of the Code of 1907.

We have indicated that paragraph two of the bill of complaint avers that, "On towit: November 13, 1911, the Mayor and Town Council of the Town of Luverne did by ordinance duly and legally adopted fix the

amount of the assessment against each of said lots * * *." Paragraph three of the bill of complaint states November 20, 1911, as the date on which the Mayor and Council fixed the amount of the assessment securing the bonds, referred to in that paragraph.

The term "final assessment" as used in Section 1401 of the Code 1907 means the act of the council in fixing the amount of the assessment against each lot by order or resolution as required by § 1384, Code 1907. See other provisions as to such assessments in §§ 1409–1418. The land was subject to the provisions of § 1411, Code 1907, which reads in part as follows:

"Any city or town having a population of less than six thousand may, notwithstanding the amount or character of any bonded or other indebtedness, issue such bonds, but the same *shall be a lien or charge only against the property improved and against the fund collected from the assessments levied against the property improved, and shall not be the general obligation of the city or town, nor shall such city or town be in any way liable to the holders of such bonds in case of failure to collect* the same. * * * which liens and assessments shall stand as security for such bonds and coupons until they are paid." [Italics supplied.]

The pertinent provision last set out is contained in Act of Aug. 14, 1907, p. 644. This section is to be strictly construed.— Lamar v. Rivers, 235 Ala. 130, 178 So. 16. The last cited section of the Act of 1907, p. 644, paragraph 1, was dealt with in Downing v. City of Russellville, 241 Ala. 494, 502, 3 So.2d 34, 41, the court saying that its object was to protect the lien of local assessments against the running of the statutes of limitation, etc., as well as further assurance that the lien shall continue in force until paid. The opinion further says, "It is elementary that, if there be an apparent conflict between general laws, and those dealing with a specific subject, the general law yields to the special. Both are given effect, so as not to conflict." The opinion refers to Lamar v. Rivers et al., 235 Ala. 130, 178 So. 16, where it was held that an action to enforce a lien created by statute as security for local improvement bonds brought within 20 years from the date of the assessment was not barred by limitations, citing Code 1907, § 1384; Acts 1927, p. 766; Acts 1932, Ex.Sess., p. 273.

The observation is made that the exigencies of the case at bar, however, do not require the application of that statute (meaning Acts 1932, Ex.Sess., p. 273), as the bill here was filed well within the period of twenty years from the date of assessment.

The bill of complaint avers that the principal amount of each bond was $250. The amount of the assessment against the first lot described in Exhibit "A" is shown to be $47.66, but the pleading does not give the date of default in payment. So of all owners, lands and amounts catalogued in that exhibit. Each owner was liable for his duly assessed portion of the assessment lien on his property with interest. His rights and liability must be determined with reference to the assessments duly levied which stand as security for such bonds or coupons "until they are paid, with full power in the holder of such bonds or coupons to enforce the collection thereof by foreclosure in any court of competent jurisdiction." The proviso in the statute limits the right of foreclosure to the first bondholder or coupon holder to the proceeds of "said suit applied pro rata to the payment of his own bonds and the bonds held by others, so that not more than one foreclosure suit shall be brought against any one lot or parcel of land." The dates pertinent to each bond issue indicated in the bill of complaint are: Sept. 1, 1910, Dec. 1, 1910, Issuance of Bonds; Initial Ordinance, Aug. 31, 1910, and Dec. 8, 1910; Final Assessments, Nov. 13, 1911, and Nov. 20, 1911. The statute makes the bonds payable in ten years from date subject to the option of the city or town to elect for payment before the maturity dates, after giving the prescribed notice.

The act approved Nov. 8, 1932, General Acts Ala., Ex.Sess., 1932, p. 273, required that: "*All liens* for public improvements which cities and towns in this State *now have or may hereafter acquire* under the general laws of this State *shall continue until same are paid or satisfied in full.*" [Italics supplied.]

The retroactive effect of the act can only be extended to all such existing liens of the city or town when the act was passed. To give the statute the effect of taking away or impairing a vested right or creating a new obligation or reviving a lien that existed by the terms of a contract or by operation of law would render the same offensive to organic law. See Mulligan v. Hilton, 305 Mass. 5, 24 N.E.2d 676,

336

133 A.L.R. p. 376, Note; Sugg v. Davis, 22 Ala.App. 281, 116 So. 152, certiorari denied 217 Ala. 191, 115 So. 153. Many decisions cited are to like effect in 11 Amer. Juris., "Constitutional Provisions," p. 1197, § 368; p. 1192, § 365; 34 Amer.Juris., p. 28, § 19; p. 30, § 23; Stewart v. Keyes, 295 U.S. 403, 55 S.Ct. 807, 79 L.Ed. 1507; Id., 296 U.S. 661, 56 S.Ct. 81, 80 L.Ed. 470. See also Steele v. Gann, 197 Ark. 480, 123 S.W.2d 520, 120 A.L.R. 754.

■ If the rule of prescription applies in the instant case, the time to be considered is counted from the date of the final assessment (unpaid and 30 days thereafter, § 1401, Code 1907) to the date of the enactment of Nov. 8, 1932. See also 34 Amer.Juris., p. 14, § 2. If the lien in question ceased to exist and apply as a binding obligation on specifically indicated property within the municipality under a municipal assessment formerly valid and binding had been barred by the statute that obtained, by laches, by the rule of prescription or repose, the Act of 1932, supra, could not revive, validate or render enforceable such former lien. The construction of the act of 1932, p. 273 in Downing v. City of Russellville, 241 Ala. 494, 3 So.2d 34, means that the lien, according to the words of the statute, should continue in force until paid, so as to protect the lien of local assessments against the running of the statute of limitations. See also Lamar v. Rivers, 235 Ala. 130, 178 So. 16.

■ The questions of stale demand, twenty-eight years from time of collection of the final assessment, and default, barred by the lapse of twenty years without recognition of the debt are raised by demurrer. When, therefore, does the rule of prescription or laches begin to run on such assessments? All sections of the Code of 1907 to be considered fix the lien as of the date of final assessment, §§ 1375, 1376, 1384, 1387, 1388, and in § 1401, it is provided: "In all cases where the property owner does not elect to pay on installments, or having elected to pay in installments, *fails to pay the first installment in thirty days from the* date of the assessment, he shall be held to have waived the right to pay in installments, and the entire assessment shall at the expiration of said thirty days become due and payable." The instant bill is silent as to this. We may look for analogy in the decisions of this court as to the running of time against the enforcement of mortgages, other contract debts or statutory liens in default. The statute of limitation or the rule of prescription begins to run when default accrues.

The material insistence of the appellees is that the complaint shows the suit was barred by the rule of prescription, in that more than twenty years have elapsed *since the date of the final assessment,* without payment or due recognition of liability. Code 1907, §§ 1384, 1401, 1402; Lamar v. Rivers, 235 Ala. 130, 178 So. 16; Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820; Scott v. Scott, 202 Ala. 244, 80 So. 82; Alabama Coal & Coke Co. v. Gulf Coal & Coke Co., 171 Ala. 544, 54 So. 685.

In Hendley et al. v. First Nat'l. Bank, 235 Ala. 664, 180 So. 667, 668, the rule established by twenty years period of prescription, as a rule of repose, creating a conclusive bar beyond which courts will not inquire, was considered and declared.

■ Under the statute in the Code of 1923, among other things, it was declared that the basic principle of prescription is "not the mere *lapse of time but the lapse of time within which no recognition of a subsisting and continuing right or obligation appears.*" This has not been departed from under the law that then obtained. Hendley v. First Nat'l. Bank, supra.

In Bailey v. Bond, 237 Ala. 59, 185 So. 411, it was declared that a period of twenty years, without any sort of subservience to the rights, the doctrine of staleness of demand, also called the rule of repose or prescription, cuts off power to assert them. Wilkerson v. Wilkerson, supra; Alabama Coal & Coke Co. v. Gulf Coal & Coke Co., supra, is distinction between laches and prescription.

In Rountree v. Jackson et al., 242 Ala. 140, 4 So.2d 743, 748, it is observed that the, "'basic principle of prescription is not the mere lapse of time, but the lapse of time within which no recognition of a subsisting and continuing right or obligation appears.'" The reason for this rule is well stated in Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820. The matter of the recognition of a debt, obligation or right was considered in Harrison v. Mason, 238 Ala. 497, 191 So. 916.

The statute, § 1411, Code 1907, when the Luverne bonds were issued, contained the words, "shall stand as security for such bonds and coupons *until they are paid.*" [Italics supplied.] The decision in Lamar v. Rivers, 235 Ala. 130, 178 So. 16, 18, com-

pares the New York statute with that before us, and said that the legislature was familiar with the well-settled canon of statutory interpretation that statutes in derogation of the common law will be strictly construed, followed with the observation that, "The exigencies of the case at bar, however, do not require the application of that statute, as the bill here was filed well within the period of twenty years from the date of the assessments."

In Downing v. City of Russellville, 241 Ala. 495, 3 So.2d 34, 41, the statute of 1932, p. 273, and Code 1940, Tit. 37, § 543, were considered, saying that: "This Act, it seems, is to protect the lien of local assessments against the running of statutes of limitation, &c., as well as a further assurance that the lien shall continue in force until paid." But that does not militate against the principle that up to twenty years from default on the due date, or the date when there was a due recognition of the continuance of the indebtedness, that indebtedness is conclusively presumed to be paid.

It follows, that we hold as to the Luverne Bonds, they were issued under the controlling effect of Section 1411 of the Code 1907, and the bar of twenty years may be pleaded to defeat the collection of the debt under the pleading before us. 37 C.J. 1200, et seq.; 37 C.J. p. 205; Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 94 So. 606, headnote and many authorities collected.

Grounds of demurrer rested on misjoinder of parties or causes of action are without merit. City of Marion v. Underwood, 231 Ala. 225, 164 So. 296; Lamar v. Rivers, supra.

Several demurrants insist upon the doctrine of stale demand. This is a rule of courts of equity applied to a lack of diligence and good faith in invoking the court's jurisdiction to the prejudice or disadvantage of a defendant. There are many decisions of this court applying such rule to particular circumstances and equities considered in "the particular case," as applied to the circumstances affecting a "particular person." Thompson v. Suttle, 244 Ala. 687, 15 So.2d 590.

Under the statute in force at the time of the bond issue Code 1907, § 1411, et seq., there are provisions for apportionment pro rata of the recovery had against such landowners in favor of the bondholders having like lien thereon. The reason for this rule is not more than one foreclosure may be had against any one lot or parcel of land. Exhibit "A" to the bill in this case shows that there is a schedule of persons, amounts and descriptions of eighty-five separate properties, involving 148 different owners (respondents here), which includes several estates and partnerships, doing business and owning some of the scheduled lots. Some of these parties are shown to be joint-owners of estate properties, partnerships or persons interested in estates to be administered, who will be affected by the decree in favor of the one complainant before the court.

Construing the bill most strongly against the pleader, as must be done on demurrer, we take it for granted that administrations of estates and partnerships have changed, different owners have come into possession of the properties since the final assessment was made, and the time the bill was filed, who would be injuriously affected by the enforcement of the asserted lien. Especially is this true if the whole amount of the respective sums asserted is collected and appropriated by decree contrary to the statute, in liquidation of complainant's claim, without consideration of the claims of other bondholders if they exist and who are not made parties. This may not be done in a court of equity after a delay of twenty-eight years or more. The bill is silent as to the just cause of the delay.

We are of opinion, therefore, that the doctrine of stale demand invoked by demurrer should be and is hereby applied, preventing recovery. Such ground is raised by many of the demurrants. It follows that the bill as framed is subject to demurrer interposed, as we have indicated, and the decree of the circuit court sustaining said demurrer is without error and should be, and is hereby, affirmed.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.

### On Rehearing.

THOMAS, Justice.

Complainant (appellant here) may amend the bill within thirty days from January 25, 1945, if he so desires.

Application for rehearing overruled.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.