243 So.2d 677

**SATELLITE BROADCASTING COMPANY**

v.

**Glenn V. TINGLEY et al.**

**6 Div. 742.**

Supreme Court of Alabama.

Dec. 3, 1970.

Rehearing Denied Jan. 28, 1971.

572

Corretti, Newsom, Rogers & May, Birmingham, for appellant.

Gary P. Smith, Johnston & Shores, Birmingham, for appellee Ack Radio Supply Co. of Georgia.

Rogers, Howard, Redden & Mills, Birmingham, for appellee Glenn V. Tingley.

PER CURIAM.

Appellant appeals· from a final decree, dated May 28, 1969, rendered by the Cir-

cuit Court of Jefferson County, in Equity, discharging a temporary injunction, and from the same decree denying certain relief against a third party. Also, the appeal is from a final decree overruling appellant's application for a rehearing. More details of the pleading are advisable.

The final decree, supra, discharged a temporary injunction granted appellee Tingley against appellant. The same decree released and discharged the principal on the injunction bond and the sureties thereon. The bond was incident to said temporary injunction. The court commented in its decree: "(This ruling is made in spite of the moot condition of said injunction, in order that a release and discharge of the principal and sureties upon said injunction bond may be effectuated)."

The trial court in said final decree dismissed appellant's cross-complaint (hereafter referred to) against American Electronix, Inc., and E. C. Atkerson for breach of warranty.

█ We are not concerned with the appeal from the decreé of the trial court that overruled the application for rehearing. There was no extension or modification of the decree. The action of the trial court in denying the application is not reviewable. Equity Rule 62, Title 7, 1958 Recompiled Code, 1969 Cum. Pocket Part; Valenzuela v. Sellers, 253 Ala. 142, 43 So.2d 121.

The pleading and the evidence each is voluminous and extended. A curtailment of references thereto, consistent with adequacy to meet the demands of this appeal, is necessary to bring this opinion within reasonable brevity.

The first pleading was a bill of complaint (in equity), filed February 9, 1965, by appellee, Reverend Glenn V. Tingley, against appellant Satellite Broadcasting Company, a Corporation, to which we will refer as "Satellite." Complainant charges that he and WLBS, Inc., a Corporation, entered into a series of contracts whereby he was to have certain broadcasting rights for his religious programs for a period of fifteen years; that said contracts were collateral inducements to the respective owners and creditors of Courier Broadcasting, Inc., a Corporation, to sell said broadcasting company to WLBS, Inc.

These written contracts were fifteen in number and each one covered one year. The first annual contract was effective May 1, 1954, and extended one year from May 1, 1954. Each successive contract was effective May 1, 1955 through May 1, 1968, and each expired one year from the effective date. The final decree discharging the injunction bond, the principal and sureties thereon, because the injunction was moot, and for other reasons, is dated May 28, 1969. In other words, the fifteen years for broadcasting had expired.

The complaint also alleges that appellant, with knowledge of the above contracts, or that it had information which if pursued would have led to knowledge of the contracts, purchased the broadcasting station, together with all the station equipment, from an intervening purchaser, and had declined to continue his broadcasts pursuant to the written agreements, supra.

. The complaint prayed for a temporary injunction, restraining or enjoining the respondent from terminating the aforementioned contracts pending further orders, judgments or decrees of the court. Also, he prayed for a permanent injunction affording like relief as in the temporary injunction.

Respondent, Satellite, after demurring to the complaint, and after moving dissolution of the temporary injunction, all of which were overruled or denied, filed an answer on December 21, 1967 to the original complaint, and made the answer a cross bill, asking for judgment against Tingley for the value of the broadcasts. The parties reached an agreement on April 19, 1966, approved by the court, for temporary respite from pleading and proceeding with the case, to the end that a settlement might be

considered. The settlement was not reached, hence the delayed answer and cross bill. During this interim, Tingleys broadcasting continued.

The answer denied any contractual relationship with the complainant Tingley and alleged that Satellite was under no obligation to transmit any radio broadcasts for him; that it had provided a substantial amount of time to complainant without in any way admitting liability or contractual obligation to do so for which complainant is indebted to respondent, in amount of $54,021.86, for which it claimed judgment.

Satellite prayed a dissolution of the injunction and judgment as aforesaid for the broadcasting; also damages covering the expense of employing counsel.

Satellite filed a petition on December 21, 1967 (after the proposed delay for consideration of settlement) to make American Electronix, Inc., a Corporation, and Ack Radio and Supply Company of Georgia (hereafter referred to as "Ack"), parties to the cause.

The cross-complainant alleges that Satellite purchased the broadcasting assets from said American Electronix, Inc. Also, that the purchase agreement contained a warranty that the only contractual obligations of the radio station, the subject of sale, were listed in paragraph 1(b) of the agreement, and that the listing did not include any reference, direct or indirect, to the claim of complainant, or the contract referred to by complainant in the bill of complaint; that the contract of purchase provides that the respondent (Satellite) "will purchase all of the assets of Radio Station WATV (a new call name) of every kind and type wherever situated * * * free and clear of all liens, encumbrances, debts and obligations, except those assumed by Purchaser under the specific terms of this agreement. * * *" No reference was made, specifically or otherwise, in the agreement concerning any obligation of Radio Station WATV (a new call name) to the complainant Tingley.

The prayer, inter alia, is as follows:

"(a) Your Respondent prays that if, upon final hearing of this cause, this Court makes and enters a decree requiring specific performance by Respondent of the covenants, agreements, and conditions as set forth in the contracts identified as Exhibits A–1 through A–15 to the Bill of Complaint, and enjoining and restraining said Respondent from failing to perform same, then, and in this event, your Honor will include in such decree an award to Respondent from the Cross Respondent in an amount equal to the fair market value of all time required to be provided to Complainant by Respondent under said decree, which Respondent avers to be, to-wit: $54,021.86 as of the date of filing of Cross Bill, and that this Court fix the amount of such award to Respondent from Cross Respondents; * * *."

There followed a prayer for damages to cover expense of employing counsel, harassment, and inconvenience, also for general or special relief as in the premises seem proper.

Satellite filed and made its answer to the original complaint (of Reverend Tingley) a cross bill, wherein it prayed that the court "upon final hearing of this cause, dissolve the temporary injunction granted in this case and award to your Respondent the amount of, to wit: $54,021.86 as compensation to the Respondent for providing time on its broadcasting facilities to Complainant to broadcast programs requested by Complainant, and that said Court also will award to your Respondent, as damages, the expense of employing counsel, in this cause, and your Respondent further prays for all such other and further general or specific affirmative relief as may in the premises seem proper."

In other words, appellant seeks pay for the broadcasting time from either the complainant, Reverend Tingley, or the third parties, American Electronix and Ack Radio Supply Company, referred to as Ack, from which it purchased the radio station.

It contends that one or the other is due to pay it for the time.

Complainant Tingley filed answer to the cross bill of Satellite against him. He denied all the material allegations of the cross complaint. Complainant also attached to his answer two agreements in writing (A and B) between him and Satellite, in part as follows:

"EXHIBIT A

"INTERIM AGREEMENT

"In connection with the above-styled cause the parties hereto hereby agree as follows:

" * * * This arrangement will continue until the Jefferson County Circuit Court, Equity Division, rules on the merits of the case.

"During the time this agreement is in effect, no charge will be made by the Radio Station for carrying said programs, except line and engineer's charges.

* * *

"Witness our hands this 15th day of February 1965." (This agreement was signed by Reverend Tingley and Satellite.)

"EXHIBIT B

"INTERIM AGREEMENT

"In connection with the above-styled cause the parties hereto hereby agree as follows:

"1. All other interim agreements are hereby superseded and held for naught.

* * *

"Witness our Hands this ——— day of ———, 1966, but effective as of March 7, 1966."

The instrument purports to be signed by Reverend Tingley and Satellite. We have omitted from said Exhibits A and B parts of the agreement which have no particular bearing on the issues of this case. Argu-

ment is presented that appellant in Exhibit A waived payment for broadcasting time until the case was decided on its merits. It seems that such Exhibit A is superseded by Exhibit B which contains no such waiver.

Some, or much, of the evidence is without material conflict. The transcript reveals that appellee, Reverend Tingley, pastor of the Birmingham Gospel Tabernacle, a religious organization, was broadcasting his sermons over Station WATV, Inc. He sold this station, accessories and equipment to WLBS, Inc. Governor Rivers of Georgia was the chief stockholder of WLBS, Inc. The station was operated under call letters of WLBS.

A part of the consideration for such sale was the fifteen written agreements (Exhibits A–1 to A–15, inclusive), supra. Under these agreements, appellee, who had considerable interest and investment in WATV, Inc., was given broadcasting rights for his sermons. The time slots for such broadcasts were changed by mutual agreements. Appellee testified that he turned down an offer of $75,000.00 plus an assumption by WLBS, Inc., of all outstanding liabilities. The fifteen-year program was worked out so that WLBS, Inc., might acquire FCC approval. These broadcasts were carried by WLBS, Inc.

Sometime between November 20, 1954 and May 20, 1955, WLBS, Inc., sold the radio station and equipment to a new group of investors. The president of the corporate purchasers, a Mr. Pruett, notified appellee that it had decided to commercialize the time program set up by the contracts and that the programs were being cancelled immediately. Litigation ensued wherein the validity of one contract before the court was upheld and indication was made that all subsequent contracts were valid. The broadcasting for Tingley was continued.

On February 27, 1957, WLBS, Inc., entered into a management consultant contract with American Electronix, Inc. This company was to have the management and

operation of WLBS, Inc. This corporation was succeeded by Ack Radio Supply Company of Georgia. Both were virtually one-man corporations, owned by E. C. Atkerson. The abbreviation "Ack" was used in this suit to refer to both corporations which were made parties to the cross complaint. An option to purchase all of the outstanding capital stock of WLBS, Inc., by American Electronix, Inc., was entered into on February 26, 1957. This option to purchase was executed on May 20, 1958. Shortly after Ack acquired Radio Station WLBS, the call letters of the station were changed to WATV.

E. C. Atkerson, the chief owner of the purchasing corporation and its president, notified appellee Reverend Tingley that it was his intention to continue appellee's programs. There was evidence of several contacts by which appellee contends Ack recognized the validity and binding effect of the contracts A–1 to A–15, supra. Ack contended, after being made party to the suit, that it was not bound by these contracts, but that it continued to broadcast the religious programs as a public service and in observance of FCC rules that radio-broadcasting stations should carry limited religious programs free of charge. Ack contends that it did not list these obligations, A–1 to A–15, supra, in the purchasing agreement with appellant because it was not bound thereby.

Mr. Guy L. Seymour organized Satellite in July 1964 for the purpose of purchasing the radio station (WATV) from Ack. It executed its note for $50,000.00 for the balance of the purchase price. This note was subsequently assigned to E. C. Atkerson, Ack's chairman and majority stockholder. The unpaid balance is approximately $60,000.00.

There was no mention in the agreement to purchase the station about the contracts A–1 to A–15, supra. Mr. Seymour took over as general manager on September 1, 1964. He learned that Reverend Tingley was broadcasting from day to day; also that Mr. Seymour had charge of the books and had an opportunity to find out if Reverend Tingley was being charged for such broadcasts, which in fact he was not.

The bill of sale, the closing incident of the transaction between Ack and Satellite, could not be delivered until FCC approved the sale and transfer of the station.

According to an affidavit of Mr. Seymour, he had no information whatever on September 30, 1964, when the purchase agreement was executed, that Reverend Tingley or any one else was claiming contractual rights to broadcast. But the claim of Reverend Tingley to broadcast under the contracts was discussed by Mr. Seymour and others on January 5, 1965, when the purchase agreement was consummated by delivery of a bill of sale.

Immediately after the execution and delivery of the bill of sale, Satellite sent a telegram to Reverend Tingley advising him that the station was no longer willing to continue the broadcasts unless he first made satisfactory financial arrangements after receipt of the telegram. Reverend Tingley instituted his suit on February 9, 1965 against Satellite.

Mr. Atkerson testified that the first he knew of the Tingley suit against Satellite and of Satellite's claim against him (Ack) was sometime in 1967. There was some testimony that Ack's attorney was mailed a copy of the pleadings filed by Reverend Tingley. Sometime in May or June, 1965, Mr. Atkerson was orally informed of Reverend Tingley's injunction suit that was filed in February, 1965. This oral conversation allegedly between Mr. Seymour and Reverend Tingley was confirmed by letter on February 16, 1965, which Mr. Atkerson acknowledged receiving on February 17, 1965. But Satellite did not file its cross-complaint against Ack until December 21, 1967 following the filing of Reverend Tingley's suit on February 9, 1965. More than 34 months had elapsed between time.

 There is no express adjudication in this suit relative to the validity of any or all of the fifteen written agreements be-

tween appellee and WLBS, Inc., nor was there any disposition of the suit which appellee filed against appellant. However, we think there was an implied adjudication that the contracts were valid and binding.

Appellant cites some cases in support of its proposition III which reads:

"A court-ordered discharge of the principal and sureties on a temporary injunction bond, together with the taxing of costs against respondent, is tantamount to a ruling that the injunction was properly granted."

Under this proposition, the following cases are cited: Postal Tel.-Cable Co. v. City of Montgomery, 193 Ala. 234, 69 So. 428; Wood, Wire and Metal Lathers, International Local No. 216 v. Brown & Root, Inc., USDC, So.D.Ala., 157 F.Supp. 342; 33 Labor Cases, §§ 71, 189, pp. 95, 665; Town of Dadeville et al. v. Wynn, 14 Ala.App. 418, 70 So. 197, 198; Title 7, Sec. 1043, Code of Alabama 1940, Recompiled in 1958; Baker v. Craig, 127 Kan. 811, 275 P. 216; Jesse French Piano & Organ Co. v. Porter, 134 Ala. 302, 32 So. 678; Am. Jur., Vol. 28, Injunctions, Sec. 303, p. 816; Jones v. Ewing et al., 56 Ala. 360.

Here, as noted above, we are concerned with the discharge of the temporary injunction which was entered in spite of the moot condition of the same, to the end that a release and discharge of the principal and sureties might be effectuated.

There is a distinction between the discharge and dissolution of an injunction. McMinn v. Karter, 123 Ala. 502, 26 So. 649; Jones v. Ewing et al., 56 Ala. 360. For an injunction to be dissolved, it must be established there is no equity, in effect, that the action is without merit. A discharge is concerned with mere matters of form. The condition of liability on an injunction bond in Alabama is the dissolution of the injunction, not its discharge. The purpose of the injunction bond is to protect the party or parties against whom the injunction is sought from wrongful or vexatious suits. Section 1041, Title 7, Code

1940, Recompiled in 1958. No right of action accrues until the dissolution of the injunction. Miller v. Wood, 257 Ala. 594, 60 So.2d 353.

We think and so hold that the action of the trial court in discharging the injunction, the principal and sureties on the bond, was tantamount to a ruling that the injunction was properly granted. Such action was also tantamount to a holding that the fifteen agreements in writing (Exhibits A–1 to A–15) were valid and subsisting contracts and binding on the original parties, appellee Tingley and WLBS, Inc. We are in accord.

But were these several contracts binding on the successors of WLBS, Inc.? This corporation sold its franchise rights and all the assets and accessories to a Mr. Pruett, who, with the approval of FCC, continued to operate the station on the same kilocycle. A court decree of Jefferson County Circuit Court, In Equity, was later entered upholding the validity of one of the annual contracts, supra.

As we have pointed out, WLBS, Inc., sold its stock in February, 1957, to American Electronix, which was succeeded by Ack Radio and Supply Company of Georgia. The stock of both corporations was owned by E. C. Atkerson. Again we note that the abbreviation "Ack" is used to refer to these purchasers and E. C. Atkerson. The corporations continued to operate the same radio station and acquired the equipment that had been the subject of sale twice before. There was no change in the kilocycles of operation.

Mr. Atkerson, as we have already noted, claims in his litigation with Satellite that he was not bound by the contracts or any of them, but he continued appellee's broadcasting as a public service to meet the requirement of FCC that radio stations furnish a certain amount of time free of charge for broadcasting religious programs.

Appellant purchased the same radio station (under different call letters) and

equipment from Ack, with approval of FCC, and continued to operate it with exception of appellee's religious programs.

We are impressed that each purchase, starting with the sale to WLBS, Inc., and finally to Satellite, was a continuation of the prior operation, each purchaser operating the same station with FCC approval and on the same kilocycles.

The trial court made a factual finding from the evidence that Satellite had notice of the existence of the contractual relationship between the radio station and Tingley relative to the radio station furnishing radio time to Tingley for broadcasting religious programs. Satellite knew this when Tingley filed suit against it and obtained a temporary injunction against Satellite discontinuing these religious programs. Satellite had this information when it entered into the agreement with appellee Tingley in 1966 to continue the case pending settlement. Ack was not a party to the suit at that time.

We think and so hold that this interruption of the proceedings and the delay pending such settlement, totalling 34 to 35 months, amounted to laches which bars Satellite, if for no other reason, from recovering judgment against Ack for the value of the radio time consumed in broadcasting for Tingley. A witness for appellant testified that the value of such radio time which Satellite furnished Tingley was $61,600.00; that the value by the month on this basis was $1100.00. At such rate, approximately $38,000.00 in damages accrued during this interruption or delay.

The doctrine of laches is not a hidebound rule like the statute of limitations, but is a creature of equity courts founded on common sense and natural justice. First Nat. Bank of Opp v. Wise, 235 Ala. 124, 177 So. 636.

The doctrine of "stale demand" is an equity court rule, applied to lack of diligence and good faith in invoking court's jurisdiction, to defendant's prejudice or disadvantage. Mott v. Helmes, 246 Ala. 331, 20 So.2d 461.

No arbitrary rule can be invoked to determine when equity will refuse to intervene because of laches, but each case turns largely on its own facts. Davidson v. Blackwood, 250 Ala. 263, 34 So.2d 205; 8A Ala.Digest, Equity, ☞67 et seq.

Satellite, through its officer, Mr. Seymour, who became associated with the radio station in July, 1964, before the purchase contract in September, 1964 with Satellite, and who continued thereafter as manager and consultant pending FCC approval of the sale in January, 1965, had the opportunity of knowledge, and we think did know, about the Tingley contracts. Satellite delayed formal action against Ack for 34½ months, during which period the broadcasting time accumulated to the value of $38,000.00.

Even though Ack had notice that Satellite was sued in equity by Tingley, and possibly could be charged with breach of warranty in its sale to Satellite, we know of no obligation on the part of Ack to intervene in the suit. "Sufficient unto the day is the evil thereof." The accumulation of the broadcasting time during the continuance of the suit in an effort to effect a settlement, over which Ack had no control or say so, was prejudicial to Ack. Satellite knew about the contract, but did not proceed formally against Ack. It waited until approximately 34 to 35 months to file the suit. We think the delay was inexcusable so far as Satellite was concerned. Satellite was guilty of laches.

We hold that appellant's notice of the contracts between Tingley and WLBS, Inc., at the time it purchased the station from Ack, bound it to perform these contracts, as the intervening purchasers had done, and is not entitled to any damages against Tingley. We also hold that laches barred Satellite from recovering damages against Ack.

The final decree of the trial court is free of error and is due to be affirmed.

We find no errors committed by the trial court that entitles appellant to a reversal of this decree.

Affirmed.

MERRILL, HARWOOD, BLOOD-WORTH, MADDOX and McCALL, JJ., concur.

## ON REHEARING

PER CURIAM.

We extend this opinion for the purpose of noting that the attorneys representing Satellite on this appeal did not become involved in this suit in the lower court until March 26, 1968, which time was subsequent to the 34 to 35 months' period referred to in the original opinion rendered by this Court on December 3, 1970. It does not appear in the record that these attorneys took any part in the agreement of continuance pending settlement.

Opinion extended and application for rehearing overruled.

HEFLIN, C. J., and LAWSON, MERRILL, HARWOOD and MADDOX, JJ., concur.