338 So.2d 1243 (1976)
S. C. DUNCAN et al.
v.
Donald Richard JOHNSON et al.
SC 1059.
Supreme Court of Alabama.
September 24, 1976.
Rehearing Denied October 29, 1976.
*1244 Stanford J. Skinner, Birmingham, for appellant Estelle W. Morgan.
Wallace, Ellis, Head & Fowler, Columbiana, for appellants S. C. Duncan, Woodrow Thomas and Paul Gilliam, Jr.
W. H. Collier, Jr., Birmingham, for appellees Donald Richard Johnson and James Milton Johnson.
LEIGH M. CLARK, Special Chief Justice.[*]
This is an appeal by the respondents from a decree in equity, rendered after July 3, 1973, the effective date of the Alabama Rules of Civil Procedure, in a case commenced and partly tried before said date. It was agreed by the parties and ordered by the court that the rules of procedure of equity cases prior to July 3, 1973, should govern the entire proceedings in the trial court.
According to the bill of complaint as last amended and the undisputed evidence in the case, on March 12, 1947, complainants-appellees, Donald Richard Johnson and James Milton Johnson, then minors, became the owners of a remainder interest in and to a seventy-three-acre tract of land in Shelby County, by virtue of a deed from their father, William T. Johnson, in which he reserved a life interest in the land. On or about January 10, 1949, Leroy Morgan, the now deceased husband of one of the respondents-appellants, Estelle W. Morgan, became owner of the life estate in and to *1245 the land by virtue of a deed from William T. Johnson purporting to convey the property in fee simple, which undisputedly it did not by reason of the outstanding remainder interest in favor of complainants-appellees.
There are references in the complaint and the evidence to negotiations between Mr. Johnson and Mr. Morgan relative to the abortive conveyance of the minors' remainder interest in the purported sale and purchase, including a possible mutual recission, but efforts along this line did not materialize. The evidence shows without dispute that in April-May 1949 the two composed their controversy or misunderstanding by Mr. Morgan's releasing Mr. Johnson from his warranty as to a fee simple title, in consideration of Mr. Johnson's satisfaction of the purchase money mortgage from Mr. Morgan for $1,500, representing one half the purchase price.
On February 11, 1950, Mr. Morgan filed a bill in equity in the Circuit Court of Shelby County, Case No. 3176, against complainants-appellees herein, then thirteen and seventeen years of age respectively, for a sale of the land for division of the proceeds of the sale. The bill of complaint alleged that the parties were joint owners or tenants in common of the land; that complainant owned "an undivided 99/100 interest in the life interest" for the life of William T. Johnson, that each of the respondents owned a "1/200 undivided interest in the life interest" for the life of William T. Johnson and that each of the respondents owned a "½ interest" in the remainder. By an amendment to the bill of complaint of February 11, 1950, an area of 1.39 acres, particularly described in the amendment, was excepted from the property described in the original bill. The circumstances constituting the basis for the averment of respondent's ownership of a 1/100 life interest for the life of William T. Johnson and the amendment of the bill of complaint in Case No. 3176 excepting the 1.39 acres form one of the main areas of contest in this case and will be hereinafter discussed further.
According to the record, a copy of the bill of complaint in Case No. 3176 was duly served by the sheriff on each of the respondents. A guardian ad litem was appointed and to represent them, who accepted the appointment and filed a general denial, and testimony in narrative form was taken before a commissioner. The only witnesses were Mr. Morgan, the complaint, and Mrs. Johnson, the mother of respondents, who as wife of respondents' father had joined in his deed of his life interest to Mr. Morgan but who at the time of the pendency of Case No. 3176 was divorced from Mr. Johnson. Both testified to the effect that the ownership of the real estate involved was as stated in the bill of complaint and that the property could not be equitably divided or partitioned among the joint owners or tenants in common without a sale. The deed from Mr. William T. Johnson to Mr. Morgan was introduced in evidence and was referred to by Mr. Morgan in his testimony as the conveyance by which he became "the owner of a life interest in said lands during the natural life of William T. Johnson." No reference was made in his testimony to the fact that the deed actually purported to convey title in fee simple. A typed copy of the deed whereby Mr. Morgan is said to have conveyed to each of the then minor Johnsons a 1/200 undivided interest in the life interest for the life of William T. Johnson was introduced into evidence in connection with the testimony of Mr. Morgan and on its face expressly reflected that it had been executed by Mr. and Mrs. Morgan and acknowledged by them before an Etowah County notary public on February 9, 1950. The deed recited a consideration of "One and No/100, and other valuable considerations DOLLARS," as paid by the then minor respondents and acknowledged by the grantors in the deed. Mrs. Johnson, the mother of the respondents in Case No. 3176, the complainants-appellees in this case, testified that in her opinion it was to the best interest of the minors that the land be sold for division among the joint owners.[1] She also testified *1246 that she and her husband were then divorced and that she was given the care and custody of the minor respondents. The guardian ad litem for the minor respondents, the present complainants-appellees, did not cross-examine either witness.
In Case No. 3176, the testimony was taken on March 13, 1950, and the cause was submitted to the court on the same day, or the following day, when a final decree was entered upon the pleadings and proof, granting complainant the relief prayed for in the bill of complaint as amended. In the decree the respective interests of the parties were determined as alleged in the complaint as amended. It was held that the property could not be equitably divided or partitioned among the joint owners without a sale, as alleged in the complaint, and a public sale was ordered to be made by the register after due publication. It was further decreed that the register conduct a reference "as soon after said sale as may be convenient" to, inter alia, ascertain and report the value of the respective interests of the parties. The property was sold to Mr. Morgan, as the highest and best bidder, for the sum of $3,050. After the sale, a reference was conducted, and a report thereof was made on April 15, 1950, in which the value of the 1/200 interest of each of the respondents "during the life of William T. Johnson was determined to be $7.75; the value of the remainder interest owned by respondents, $1,484.50; the value of the 99/100 interest of Mr. Morgan for the life of Mr. William T. Johnson was determined to be $1,550.00. Testimony in support of such valuations was furnished by Mr. Morgan and Mrs. Johnson. As a part of Mrs. Johnson's testimony, she said that complainant had agreed to convey to the two minor respondents the 1.39 acres excepted from the land sold for division pursuant to the amendment to the complaint, and had agreed to have "one small house" moved onto said excepted tract, and to pay all court costs and attorney's fee in the case. She said that on that basis it was her opinion $1,500 would be the reasonable value of the remainder interest and the undivided life interest of the minor respondents. On cross examination by the respondents' guardian ad litem, her only testimony was, "This is the best offer that I have been made." Mr. Morgan corroborated Mrs. Johnson's testimony as to the value of the respective interests and his agreement to convey the minors the small tract of land and further testified that the respondents would have the right to use the well on the land sold in securing water. The reference was conducted on the same day the land was sold at public outcry, April 15, 1950. The sale and the report of reference were ratified and confirmed by the court on April 28, 1950. A Register's deed to Mr. Morgan for the property was executed the same day. A deed from Mr. Morgan and his wife in favor of complainants in this case conveying the mentioned 1.39 acres was executed on May 1, 1950. On May 12, 1950, Mr. Morgan conveyed his interest to the property in litigation to Mrs. Morgan, who has had a house built thereon in which she has lived ever since.
As a consequence of the proceedings in 1950, the register had $1,500, which she could not pay direct to the minors by reason of their minority. On May 5, 1950, the mother of the minors, filed a petition in the Circuit Court for the removal of the disabilities of nonage of James Milton Johnson, who had become eighteen years of age. The verified petition set forth the minor's interest in an undivided interest in the 1.39 acres referred to and the money on deposit with the register derived from the sale of land for division. The record shows that a copy of the petition was served on James Milton Johnson by the sheriff on May 8, 1950. The court granted the petition and removed the disabilities of nonage of James Milton Johnson on May 10, 1950, and on that date $750.00 was disbursed by the register by check made payable to him.
On May 23, 1950, the mother of the minors filed a petition in the probate court for letters of guardianship of Donald Richard Johnson. The guardian executed an appropriate *1247 bond, the letters of guardianship were granted, and on May 25, 1950, on petition of Mrs. Johnson, she was allowed to spend $100 per month from the estate of the minor for his maintenance, support and medical care which was ordered on June 15, 1950. The $750.00 in the register's account owing to Donald Richard Johnson was disbursed by register's check mailed to Mrs. Lena Johnson as guardian.
On June 29, 1972, Mrs. Morgan executed a warranty deed to the other respondents-appellants, for a consideration of $150,000, taking a purchase money mortgage from them for $106,000.
The case now before us was commenced by the filing on July 13, 1972, of a bill of complaint entitled a Bill to Clear Up Title of Remaindermen, which is referred to by appellants as a bill in the nature of a bill of review, and is an attack upon the decree and proceedings in Case No. 3176, particularly the Register's deed purporting to convey the interest of the complainants-appellees to the land in question. It is alleged in the bill of complaint as amended that the circuit court did not have jurisdiction in Case No. 3176 to decree a sale of the land for division; that the purported conveyance from Mr. Morgan and his wife to the minor Johnsons, of a 1/100 undivided life interest for the life of their father, "was a fraudulent scheme to divest your complainants of the remainder interest in the property and was void and of no consequence"; that the Register's deed was void, and that all subsequent purported conveyances of any right or interest in the land, other than the life interest for the life of W. T. Johnson, are invalid as to complainants and constitute clouds upon their title. A demurrer of respondents to the bill of complaint as last amended was overruled. Answers were filed, the case brought to issue, evidence for both sides presented, and the case submitted on the pleadings and proof, which included the oral testimony of witnesses in open court and documentary evidence. The court decreed that the jurisdiction of the circuit court in Case No. 3176 was procured fraudulently; that the register's deed issued in said case to Mr. Morgan was invalid; that the final decree in said case and all of the proceedings therein were void, and that at the time of the death of complainants' father, all right, title and interest of the respondents in the real estate shall be and is divested out of them and vested in complainants.
In their answers to the bill of complaint as amended, respondents deny the charging part thereof and set forth as separate affirmative defenses: (1) an estoppel, (2) the statute of limitations, (3) laches, and (4) prescription.
We need first to consider the fundamental question whether the evidence supports the charging part of the bill of complaint, as to which the parties are still at variance, for if it does not, complainants were not entitled to a decree in their favor, irrespective of any determination of the special issues raised by respondents' answers.[2] As to this, we first consider the case as if it were unaffected by the length of time between the Register's deed and the final action of the court in Case No. 3176 and the date the bill of complaint in this cause was filed, July 12, 1972, or on or about May 12, 1972, which complainants alleged was the first time they discovered the alleged fraud.
There seems to be no disagreement between the parties as to the following propositions of law. 1. The life tenant and the reversioner or remainderman are not joint owners or tenants in common, and neither can maintain a judicial proceeding against the other for a sale of the property *1248 for division for distribution of the proceeds of the sale. Code of Alabama 1940, Tit. 47, § 186; Bedsole v. Bedsole, 272 Ala. 589, 133 So.2d 237 (1961); Ganus v. Sullivan, 267 Ala. 16, 99 So.2d 204 (1957); Street v. Watts, 202 Ala. 622, 81 So. 564 (1919); Cobb v. Frink, 200 Ala. 191, 75 So. 939 (1917).
2. A part owner of the estate for life and the owner of the reversion or remainder who also is a part owner of the estate for life are joint owners or tenants in common and each may maintain an action against the other for a sale for division for distribution of the proceeds. Etheredge v. Etheredge, 219 Ala. 660, 123 So. 48 (1929); Letcher v. Allen, 180 Ala. 254, 60 So. 828 (1913); Gayle v. Johnson, 80 Ala. 395 (1885). Each of the immediately preceding propositions assumes that the property is not capable of being equitably partitioned or divided.
To determine whether respondents in Case No. 3176 were owners in part of an interest for life in the property at the time of the proceeding and determination, we must analyze the reasons underlying the agreed upon propositions of law and consider the details of the circumstances shown by the record of Case No. 3176, and the record of the case now before us.
The transferor (especially a relative and particularly a parent or other ancestor of a transferee), as well as the transferee, of a life estate or a remainder interest, whether by deed or by will, often relies upon, and has the right to look forward to, the inviolability of the governing principle of law, as applied to the transferee and the interest transferred, unless superseded by valid law. The legitimate objective and right of the owner of property to convey it so as not to subject the life tenant to the rights of the remainderman or the remainderman to rights of the life tenant and to preserve the interest of each intact until the death of the life tenant, would be thwarted by permitting one, over the objection of the other, to merge, or to transfer as merged, their respective interests. That they, if sui juris, can do so without the assistance of the courts does not militate against the principle that one sui juris cannot obtain the assistance of the courts to accomplish such end against one who is not sui juris. There seems to be no disagreement with the principle (and we think that any disagreement therewith would be unreasonable) that the action would have been void, if, in ignorance of the law on the part of all concerned, a judicial sale was accomplished by the sole owner of a life estate against the sole owner of the remainder. This brings us initially to the question: Did the respondents in the 1950 case in reality own an undivided part of the life estate?
The deed purporting to convey a 1/100 life interest to the Johnson boys for the life of their father was apparently executed and acknowledged on February 9, 1950; it was recorded in the office of the Probate Judge of Shelby County on June 22, 1950. Where it was between those dates is not shown by the record. There is no evidence that it was ever delivered to the grantees. According to the testimony of each of the complainants-appellees, he did not receive the deed and he knew nothing about it until shortly before the trial of this case. Their mother testified that the deed was never delivered to her.[3] The bill of complaint avers an ownership by the Johnson boys of a 1/200 interest of each or a combined 2/200 interest in the life estate for the life of their father. On the basis of such averment in the complaint and the testimony relative to the instrument purporting to convey the interest, together with the other necessary averments and evidence, and with nothing to quicken the mind of the court to a questioning of the source of the interest of the Johnson boys in a part of the life estate for the life of their father, we can understand the rendition of the decree for *1249 the sale for division. However, if the particular averment was false and if the evidence to support it was untrue, the decree was fraudulently obtained. The court in Case No. 3176 judicially determined that the respondents were owners of part of a life estate. It cannot be seriously questioned that if there had never been any act or instrument that had purported to entitle the respondents in Case No. 3176 to a part of the life interest for the life of their father, the averment and the testimony in this respect would have been based upon a vacuum and the decree when properly attacked should not be allowed to stand.
The execution of a deed that is never delivered is no more effectual as a conveyance of title than the delivery of a purported deed that is never executed. Pittman v. Pittman, 247 Ala. 458, 25 So.2d 26 (1946); Brown v. International Harvester Co., 179 Ala. 563, 60 So. 841 (1912). A manual delivery, or the like, that is, a handing or transfer of the possession of a deed by the grantor to the grantee, is not always a prerequisite to a transfer of title. The principle was declared recently as follows:
"While ordinarily delivery of a deed is made by the grantor, giving the possession of the instrument to the grantee, such physical delivery is not necessary when a grantor's acts, or words, or both, clearly manifest an intended delivery of the deed. Delivery is a fact resting in intention and is to be determined from all of the acts and declarations of the parties relating thereto." Watson v. Watson, 283 Ala. 214, 219, 215 So.2d 290, 295 (1968)
In Crosby v. Baldwin County, 227 Ala. 122, 124, 148 So. 814, 815 (1933), expressly relied upon for the quoted declaration in Watson, the court points to the criterion, i.e., whether there is the reservation of a locus poenitentiae:
". . . It is further declared by this court that where a deed is in the possession of the grantee the presumption (or prima facie) is that of delivery (Napier v. Elliott, 177 Ala. 113, 58 So. 435; Skipper v. Holloway, 191 Ala. 190, 67 So. 991); and the test of delivery of a conveyance is whether the grantor intended to reserve to himself the locus poenitentiae. If he did, there is no delivery and no present intention to divest himself of the title to the property. Griswold v. Griswold, 148 Ala. 239, 241, 42 So. 554, 121 Am.St.Rep. 64; Gulf Red Cedar Co. v. Crenshaw, 169 Ala. 606, 613, 53 So. 812; Powell v. Powell, 217 Ala. 287, 116 So. 139; Dawson v. J. A. Lindsey & Co., 223 Ala. 169, 171, 134 So. 662. That is, though delivery may be by the grantor handing the conveyance to the grantee, this is not necessary to a valid delivery, and, when `the grantor's acts or words, or both, clearly manifest an intended delivery of the deed, the courts will give effect to the intent and declare the deed delivered.' Perkins v. Perkins, 206 Ala. 571, 91 So. 256, 257."
To determine whether there was a reservation by Mr. Morgan of a locus poenitentiae, we must look to the circumstances existing before, not after, the rendition of the decree providing for the sale for division. There had been no recordation of the deed, although there had been ample time for its recordation. Apparently there had been no manual delivery of the deed to the Johnson boys or anyone acting for them. Apparently it had not even been shown to the attorney for complainant in Case No. 3176, although a typewritten copy of the deed had been supplied the attorney, which was referred to in the testimony of Mr. Morgan and Mrs. Johnson in Case No. 3176. The fact that it was a typewritten copy, with no reproduction of the signatures of the grantors or the notary public acknowledging the execution of the instrument, is not highly significant in view of the juvenile status of photocopying in 1950, but it would have left the respondents without any concrete evidence that there had ever been even an execution of the deed, if they had thereafter needed it to support a claim for a part of the life interest.
"Although the actual custody of the instrument has not passed from the hands of the grantor, any words or acts or both clearly showing an intent that the deed *1250 be presently effective, become the deed of the grantee, subject to his or her control, and is held by the grantor or a third person as a mere agent or custodian of the grantee, evidence an effectual delivery. But where the grantor reserves the locus poenitentiae, that is to say, not a mere custody, but a right to withdraw from an incompleted transaction, reserves control over the document in his own right, there is no delivery." Alford v. Henderson, 237 Ala. 27, 29, 185 So. 368, 369 (1938).
Of significance, we think, is the fact that the deed excepted from the interest purporting to be conveyed thereby the 1.39 acres that had not been deeded at the time to the Johnson boys but was deeded to them thereafter as a part of the consideration that would pass to them for their interest, particularly their remainder interest, in the land. All of this evinces incompleteness of the transaction prior to the rendition of the decree, an offer that depended upon an acceptance for finality, or a gift with strings attached.
Although the deed recited a consideration of "ONE & No/100, and other valuable considerations, DOLLARS" paid by the then minors, there was no actual consideration, and there is no contention that there was any actual consideration. The deed was nothing more than an effort to effectuate a voluntary conveyance of a part of the life estate, not as something in and of itself of value to the grantees or to the grantor, but, on the contrary, that which constituted an impediment to the desire of Mr. Morgan and at the time a liability, rather than a substantial asset of the owners, whether Mr. Morgan or the Johnson boys. Owned by Mr. Morgan, it constituted a barrier to his acquisition of the remainder; owned by the boys, it would make their remainder vulnerable.
In the procurement of the decree for the sale for division, the representation was made to the court that at that time respondents were owners of a part of the life estate. That representation was not true. In order for them to have had an interest in the life estate sufficient to entitle Mr. Morgan to a sale for division, that interest must have been a genuine, a good faith, interest, not a sham, not a simulated fictional interest. The misrepresentation made to the court was a misrepresentation of fact, in that it represented to the court that in fact respondents owned a part of the life estate for the life of their father as of the time of the submission of the case to the court for a decree, which they did not.[4]
To constitute fraud, in its legal signification, it is not necessary that one intend to injure another. In making this statement we are not relegated to drawing a distinction between fraud requiring scienter and innocent fraud. Cartwright v. Braly, 218 Ala. 49, 117 So. 477 (1928); Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484 (1970). That distinction goes only to the question of knowledge (scienter), or its equivalent, of the falsity of the representation. In neither kind of fraud is an evil motive an essential element. Even a white lie made to mislead or deceive another and relied upon by the other to his injury may be made the basis for an action or defense of fraud.
"If fraud is proved the law will infer an improper motive, and the actual motive of the speaker is immaterial. In other words, it is not essential that the misrepresentator be motivated by a desire to injure complainant or to benefit himself; and it makes no difference that his motive was solely to benefit a third person.. . ." 37 C.J.S. Fraud § 26.
More to the point is Professor Prosser:
". . . The fact that the defendant was disinterested, that he had the best of motives, and that he thought he was doing the plaintiff a kindness, will not absolve him from liability, so long as he did in fact intend to deceive." Prosser, Torts (4th ed.) 700
Even though a decree is based upon the false averment of a material fact and *1251 false testimony as to a material fact, it is not necessarily subject to vacation other than by a direct attack upon it in due course. For the decree in this case to be subject to successful attack, the legal fraud from which it resulted must consist of more than false pleading and false evidence, as repugnant as each is to the administration of justice. Otherwise, an action brought to invalidate the judgment or decree would merely constitute a retrial of the issues between the parties or their successors in interest. Nevertheless, as here, when fraud constitutes the root of the evil, when it consists of an imposition upon the court of a case over which without the fraud it would have no jurisdiction, when without the fraud the case would have no germ of life as a judicial proceeding, and the fraud from its inception to its perpetration is that of the one procuring the judgment, the one injured thereby is not necessarily limited to a direct attack upon it.
"But where the jurisdiction of the court of law is acquired by the fraudulent concoction of a simulated cause of action, the fraud itself to be consummated through the instrumentality of a court of justice, the protection of the court demands that there should be a remedy. We can conceive of no worse reflection upon a judicial system, no lowering of its dignity and of the respect due to its findings more regrettable than that the tribunal of justice may become an impotent agency of fraud against those who look to it for protection and who are free from fault or neglect in the premises. . ." Bolden v. Sloss-Sheffield, etc., 215 Ala. 334, 335, 110 So. 574, 575 (1925).
The majority opinion in Bolden met with a vigorous three-justice dissent, but the difference was chiefly as to the application, rather than the soundness, of the announced principles. In his dissenting opinion on rehearing, Mr. Justice Ormond Somerville, Sr., juxtaposes the facts alleged in the bill of complaint to the language of the majority opinion of Mr. Justice Bouldin on original submission and on rehearing, with a view of showing a misapplication of the established principles. In Bolden, there had been a judgment in a workmen's compensation case which had been obtained, according to the bill of complaint, by means of the false averment of a petition, and false evidence to support the averment, that plaintiff was the wife of a deceased employee of defendant who had been fatally injured as the result of an accident arising out of and in the course of his employment. The dissenting opinion, on original submission and on rehearing, reasoned that there was a showing of nothing more than a false claim and perjured testimony, which did not amount to "a fraudulent concoction of the cause of action, a malus animus, and a false simulation of relationship with a purpose to cover up the facts, and to establish a claim by perjury."
Our opinion that in the instant case there was a fraudulent concoction of the cause of action, with an intent to deceive, and a false simulation of a relationship supported by knowingly false testimony is fully supported by the majority opinion and is not adversely affected by the minority opinion in Bolden v. Sloss-Sheffield Steel and Iron Co. In Bolden, the court had general jurisdiction over all proceedings relating to the right of an employee or his dependents to recover from his employer for on-the-job injuries. In the instant case, the court had no jurisdiction of a proceeding for the sale of land for division unless there was joint ownership or cotenancy. In Bolden, the jurisdiction of the court would not have been defeated by a showing that the petitioner was not the wife of a deceased employee. As to the instant case, the jurisdiction of the court in the 1950 proceeding would have been defeated by a showing that there was no joint ownership or cotenancy. In Bolden, the minority opinion viewed the action of the petitioner in the workmen's compensation case as no more than the concoction of a claim to a right to recover. Here, there was not merely the concoction of a claim, a contention, but also the concoction of Case No. 3176 for the purpose of obtaining jurisdiction of the court, not merely for the purpose of obtaining some relief.
*1252 We now turn to the question whether the right of complainants-appellees to relief is barred by estoppel, the statute of limitations, laches or prescription.
Notwithstanding the issue between the parties as to the respective interests of Mr. Morgan and the Johnson brothers during the short interval between the execution by Mr. Morgan of a deed for 1/100 of a life interest for the life of Mr. Johnson and confirmation of the sale for division, it is undisputed that before and after that interval, the entire possessory estate belonged to Mr. Morgan or his successor in interest. Not only has there been no right to oust either from the possession, but neither of the brothers has ever had any right of possession to any part of the property.
"A possessory estate for life, like any possessory estate, includes the right of its owner that his possession be not disturbed during the continuance of his estate. . .[5] Despite these qualifications, the right that the owner's [life tenant's] possession be not disturbed is important and has many consequences, some of which raise problems having unique importance with respect to estates for life." Powell, Real Property (1973) § 203(2).
Any time limitation upon an action presupposes a right to bring the action. The interests of the appellees have been and still are future interests only. Their rights, except in an extremely limited respect, have never accrued. They had no more right to the possession of the property, except for limited purposes, than a complete stranger. They would have been trespassers in the physical assertion of such an assumed right. As remaindermen, in the absence of special circumstances, all they had to do to preserve their interest in the land for themselves and their successors was to wait; no action was required of them. A life tenant is a trustee for the remaindermen in the broad sense that he cannot endanger or dispose of the property to their injury; the only difference between such a trustee and a trustee of pure trust being that the life tenant may use the property for his exclusive benefit and take all income and profits therefrom. Amos v. Toolen, 232 Ala. 587, 168 So. 687 (1936). The remainderman is not required to pay any of the taxes on the property. This is an obligation of the life tenant. Christopher v. Chadwick, 223 Ala. 260, 135 So. 454 (1931); Pruitt v. Holly, 73 Ala. 369.
The courts of Alabama (and courts generally) have uniformly and steadfastly held that a life tenant cannot acquire the title of a remainderman by adverse possession. Pickett v. Doe ex dem. Pope, 74 Ala. 122 (1883); Head v. Taylor, 272 Ala. 241, 130 So.2d 4 (1959); Monte v. Montalbano, 274 Ala. 6, 145 So.2d 197 (1963); Hammond v. Shipp, 292 Ala. 113, 289 So.2d 802 (1974); Hinesley v. Davidson, Ala., 335 So.2d 380 (1976). Mr. Justice H. M. Somerville first clearly enunciated the reason for the principle:
"The reason is manifest. The possession of the life-tenant must be taken to be conclusively friendly to the rights of the remainder-man. The hostility of his claim can not, in the absence of a hostile possession, be considered as an invasion of the rights of the remainder-man and, for this reason, it cannot be the ground or gravamen of a legal action. It is, therefore, commonly said, that the possession of one is that of the other. It is an axiomatic proposition, which requires no reasoning in its support, that there can be no incompatibility between a right which exists and one, so to speak, which does not exist. The tenant for life, is entitled to actual possession of the premises of which he is enfeoffed; the remainderman is not so entitled, as long as the life-tenant is living. The actual possession of the former, therefore, is rightful, and not wrongful. It is not adverse to any right of the remainder-man, but perfectly compatible with all of his rights.

*1253 The latter having no right of possession, either actual or constructive, cannot be disseized, or ousted, in any proper acceptation of these words." Pickett, supra, 74 Ala. 124, 131-2.
Appellants-respondents are not required to rely upon the ten-year statute of limitations or the ten-year adverse possession statute (Code of Alabama, Tit. 7, §§ 20, 828). Twenty-two years transpired between the sale of the land for division and the institution of instant case, and appellants-respondents rely heavily upon prescription, a rule of repose, as a bar to the action. In Bass v. Bass, 88 Ala. 408, 7 So. 243 (1889) the court stated tersely through Stone, C. J.:
"It is certainly the general rule, that neither a statutory bar, nor prescription, runs against a remainder-man, until the termination of the estate of the life-tenant. There must be a right to sue, before the bar begins to run."
The general inapplicability of the doctrine of prescription to estates in reversion or remainder has been uniformly observed. Dallas Compress Co. v. Smith, 190 Ala. 423, 67 So. 289 (1914); Kidd v. Browne, 200 Ala. 299, 76 So. 65 (1917); Kyser v. McGlinn, 207 Ala. 82, 92 So. 13 (1921). Cases such as Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820 (1935), not involving contests between remaindermen and life tenants or tenants per autre vie are inapposite.
It is to be seen from the usual application of prescription as a rule of repose and at least some of the reasons for the rule, that it cannot be generally applied with impunity to the remainderman in an action between him and an occupant, wherein the occupant claims that by lapse of time in which the remainderman has not asserted his right he has lost it. At the time of the creation of a life estate, a span of more than twenty years is ordinarily contemplated. In many cases it is much more than twenty years. In almost all of such cases the remainder or the reversion would have no substantial protection against unscrupulous conduct of the life tenant in an effort to effect a defeasance of the reversion or the remainder. In the light of all of this, there can be no question as to the justification for the principle, that generally prescription will not bar an assertion by the remainderman against the life tenant of his rights as the remainderman.
We now consider some special cases in which it has been held or indicated that prescription would apply against persons claiming as remainderman and in favor of life tenants. The leading case seems to be Woodstock Iron Co. v. Fullenwider, 87 Ala. 584, 6 So. 197 (1888), which was an action of ejectment by heirs of the former owner in fee simple against the successor in interest of his widow, who had owned a life estate under her right of dower and had purchased the reversionary estate at a sale by the administrator for the payment of the decedent's debt, more than twenty years before the commencement of the action, and her successors in interest had been in continuous, exclusive and open possession, under claim of ownership, since the widow's death. In holding that the suit was barred by prescription, the court placed emphasis on the equitable interest of defendant, the presumption that the rights of plaintiffs had been lost by reason of an "act or acquiescence, based on some omission or neglect, and the right of the plaintiffs to go into a court of equity, to remove the cloud from their title created by the probate court proceedings."
The court concluded:
"But the laches here imputed to the plaintiffs is the fact of having allowed the probate court proceedings to remain unassailed for over twenty yearsproceedings under which, though void at law, a good equitable title to the reversion had been acquired, accompanied with possession and claim of ownership, on the part of the purchaser and her subvendees, during the whole of this long period.
"The fair legal presumption arising from this state of facts, in our opinion, is, that the purchaser, or those claiming title under her, have filed a bill in equity compelling the heirs of Hudson to convey to them the legal title; or else that a voluntary conveyance of such title has *1254 been made by such heirs, thereby converting the equitable into a legal title. Bland v. Bowie, 53 Ala. 152; Bell v. Craig, 52 Ala. 215."
If in the instant case there had been possession by respondents-appellants, or any of them, for a long period of time after the termination of the life estate, if the purchaser at the sale of the land for division had not been the principal actor in the proceedings for the sale with an interest ulterior to that of buying the property at a reasonable price, and if the complainants-appellees in this case had had sufficient knowledge or notice, or opportunity for acquiring knowledge or notice, of the sale for division, Woodstock Iron Co. v. Fullenwider would dictate a denial of the relief sought by complainants-appellees. In the absence of any of the stated conditions, it neither authorizes nor requires such a determination. Neither of the first two conditions is met herein. The third is a contested issue between the parties, which we will hereinafter consider.
That laches, rather than prescription, was the controlling basis for the decision in Woodstock Iron Co. v. Fullenwider, is supported by W. T. Smith Lumber Co. v. Barnes, 259 Ala. 164, 66 So.2d 77 (1953), in which it is stated:
"In this State the Court realized that there should be some relaxation or exception to this rule, and since 1888 when the Court rendered the decision of Woodstock Iron Co. v. Fullenwider, 87 Ala. 584, 6 So. 197, this Court has said that a remainderman not in possession and with no right to the immediate possession must under some circumstances file a bill to remove a cloud from his remainder estate during the life of the life tenant to escape a charge of laches. This principle has now become the settled law in this State, and is distinguishable from the many cases which hold that the remainderman is under no duty to act until the termination of the life estate when the life tenant has attempted to convey the fee."
Speaking to the question whether the ten-year statute of limitations had run against a remainderman, it was stated in Cotney v. Eason, 269 Ala. 354, 357, 113 So.2d 512, 515 (1959), as follows:
"A remainderman not in possession is under no duty to maintain a bill to remove a cloud from his remainder estate pending a life estate, but there are circumstances which require him to act pending the particular estate in order that he may escape the charge of laches. Ward v. Chambless, 238 Ala. 165, 189 So. 890; Teal v. Mixon, 233 Ala. 23, 169 So. 477."
Our cases, we think, are to the effect that in the absence of some special equity in an interest in property in addition to that of one's interest as a life tenant, or a tenant per autre vie, and knowledge or some reasonable notice thereof on the part of the remainderman, there is no duty on the remainderman to institute a proceeding to remove a cloud upon title of the remainderman, and the rights of the remainderman as such are not destroyed by the mere expiration alone of a period of time, whether ten years, twenty years or longer.
We hold that complainants-appellees are not precluded from a decree in their favor by reason of the doctrine of prescription of twenty years or the statute of limitations of ten years. Even so, respondents-appellants insist that complainants-appellees are estopped to maintain the action and that the equitable principle of laches disentitles complainants-appellees to relief. One cannot be estopped from asserting a fact of which he is ignorant if he commences his remedial action with promptness after becoming acquainted with the facts. Nelson Realty Co. v. Darling Shop of Birmingham, Inc., 267 Ala. 301, 101 So.2d 78 (1958). Nor does laches apply in the absence of knowledge or sufficient information to put him on notice of, or inquiry as to, an adverse claim. Cotney v. Eason, supra; Hagood v. Knight, 257 Ala. 64, 57 So.2d 616 (1952); Pittman v. Pittman, supra.
The opposing parties meet head-on with strong argument in support of their respective positions on the question whether the evidence in the case necessitates a conclusion *1255 that complainants-appellees cannot prevail by reason of laches or estoppel. All of the oral testimony in the case was presented in open court. It is the oral testimony, and not the documentary evidence, that sheds light upon the issue. Each of the complainants-appellees stoutly testified that prior to a short period immediately preceding the filing of the action he knew nothing whatever of the sale for division in 1950; that he was not present at any part of the proceeding and had no notice whatever of it; that he had no knowledge of ever receiving any of the proceeds of the sale or of any benefit accruing to him from the proceeds of the sale. There was some evidence, strong evidence in the records of the register in chancery, that the older brother, soon after his disabilities of nonage had been removed at the age of eighteen years, received and endorsed a check for his part of the purchase price of the property, but he denied that he had knowingly received anything of value that could or did call his attention to any such sale as the 1950 sale for division. There is testimony from which a different inference can be drawn, but there is no positive testimony to the contrary. The evidence of Mrs. Johnson, the mother of complainants-appellees, does not satisfactorily show what happened to the seven hundred and fifty dollars that was received by her as guardian for the younger Johnson minor or the seven hundred and fifty dollars that was disbursed by the register to the older Johnson boy upon his relief from the disabilities of nonage, but we agree with counsel for respondents-appellants that the money was used in their interest and for their benefit.
Strong evidence against complainants-appellees on the question whether they knew or had reasonable grounds for believing that there had been a sale for division, divesting them of title as remaindermen, which had inured to their benefit, is to be found in the evidence relative to the conveyance by Mr. Morgan to them of a fee simple estate in 1.39 acres of the original seventy-three-acre tract, but as to this the position of complainants-appellees and their counsel is that not until a few months before the filing of the bill of complaint did they ever have any notice whatever that Mr. Morgan or his successors in interest was at variance with their continuous understanding that their interest was a future interest only and not effective until the death of their father. Other than documentary evidence and the assumption, not without reason, that most people would have been moved to inquiry upon receipt of the money and acceptance of the 1.39 acres as to the reason for the money and the conveyance of the 1.39 acres, there is little ground for challenging the truthfulness of the testimony of the Johnson Boys. According to them, they understood that there had been some question as to the transfer of their father's life estate to Mr. Morgan and that the conveyance to them of the 1.39 acres of the land resulted from a settlement between Mr. Johnson and Mr. Morgan.
We are not unmindful of undisputed testimony by Mrs. Morgan, strongly relied upon by respondents-appellants, that in 1965, Donald Richard Johnson, who had acquired his brother's half interest in the 1.39 acres, inquired of Mrs. Morgan whether she "would sell him a little bit of my [Mrs. Morgan's] property," in order that he might have room for an addition to a shop in the back of his house, which she let him know she was unwilling to sell. This inquiry was not inconsistent with the contention of complainants-appellees that they understood all along that they owned the property at the expiration of the life estate, that the life estate for the life of their father was in Mr. Morgan and his successor or successors in interest. If Donald Richard Johnson had attempted to extend the building onto the property covered by the life estate without a conveyance from or permission of the life tenant, he would have been a trespasser.
We cannot reconcile a finding that it was brought home to complainants-appellees that there was a claim by the Morgans that they owned the fee to the property before they were alerted to the fact by their information that a sale was in prospect and that a survey was in the process of being made within less than a year from *1256 the time suit was filed, without imputing perjury to them. We do not feel justified in making that imputation. The trial court was in a better position than we to determine whether their testimony could be reasonably reconciled with the rest of the evidence without imputing perjury to anyone. We have no reason for attempting to make an exception to the general rule that where the evidence is taken ore tenus, a presumption will be indulged in favor of the trial court and that its finding and decree will not be disturbed unless plainly erroneous. Hill v. Delchamps Food Stores, 294 Ala. 14, 310 So.2d 871 (1975); Smith v. Gill, 293 Ala. 736, 310 So.2d 214 (1975); Louisville & N. R. Co. v. Harris Transfer Co., 293 Ala. 121, 300 So.2d 378 (1974). We should also note that the record shows painstaking care on the part of the trial judge in his search for the truth to guide him in the rendition of a just and equitable decree.
Notwithstanding a finding to the effect that until a few months before suit was filed in this case, complainants-appellees had no knowledge or notice of any enrichment of them as a result of the sale of the land for division, they did have such knowledge or notice at the institution of or during, this proceeding. It would be inequitable for them to retain the benefit thereof at the expense of the respondent Mrs. Morgan, who acquired the title of Mr. Morgan, soon after the sale for division in 1950. Complainants-appellees have in some way had the benefit of fifteen hundred dollars paid to someone for them by Mr. Morgan. In addition, upon termination of the life estate of their father, they may have the benefit of a valuable house, which probably would never have been erected thereon but for the honest belief by Mrs. Morgan that she was the owner thereof in fee simple. The complainants-appellees are entitled to the relief granted them, but not without compensation to respondent-appellant, Mrs. Morgan (or her successors in interest), for the stated benefits received by complainants-appellees. The right to remove the house for a period not to exceed one year after the death of William T. Johnson is recognized in the decree of the trial court, as to which there is no issue on appeal. It may be that such provision of the decree will adequately protect Mrs. Morgan (or her successors in interest) as to her equitable right to the house, but the interest of justice and equity would be better served by the addition of an option, for a period not to exceed twelve months from the death of William T. Johnson, of an election not to remove the house and to require that complainants-appellees pay Mrs. Morgan (or her successors in interest) the amount by which the value of the property will have been enhanced by the house, including its appurtenant structures, at the time of the termination of the life estate. That amount can be determined by an agreement of parties or their successors in interest, but, if they are unable to agree, then on motion of any party hereto, or his or her successors in interest, jurisdiction of the question is hereby ordered to be retained by the trial court for the purpose of the hearing and a determination of such amount. There is no occasion for disagreement as to the amount appellees-complainants should pay appellant-respondent, Estelle M. Morgan, or her successors in interest, in return for the mentioned fifteen hundred dollars, the principal amount, plus simple interest at the legal rate of six percent per annum from April 17, 1950, until the date of payment to Mrs. Morgan or her successors in interest. To secure the payment of such amount and the amount of enhancement of value of the property by reason of the house, including its appurtenant structures at the time of the termination of the life estate for the life of William T. Johnson, a lien is imposed on the property in favor of appellant-respondent, Estelle M. Morgan, or her successors in interest. The decree of the trial court is hereby modified as indicated and affirmed.
MODIFIED AND AFFIRMED.
W. J. HARALSON, EUGENE W. CARTER, ERIS F. PAUL, A. B. CUNNINGHAM, and INGRAM BEASLEY, Special Justices, concur.
L. S. MOORE, Special Justice, dissents.
*1257 L. S. MOORE, Special Justice (dissenting).
On March 12, 1947, William T. Johnson and Lena Johnson executed and delivered a deed conveying to James Milton Johnson and Donald Richard Johnson the real property involved in this case reserving a life estate in William T. Johnson in said property.
On January 10, 1949 William T. Johnson and Rena Faye Johnson, a second wife, conveyed said property to Leroy Morgan. This was an effort to convey the fee simple title notwithstanding the remainder interest held by James Milton Johnson and Donald Richard Johnson.
Leroy Morgan and wife, Estelle W. Morgan, executed a deed dated_day of February, 1950 and acknowledged February 9, 1950, conveying a 1/100 interest in the life estate during the life of William T. Johnson in said property to James Milton Johnson and Donald Richard Johnson. The said James Milton Johnson and Donald Richard Johnson were minors at that time and are the sons of William T. Johnson and Lena Johnson. William T. Johnson and Lena Johnson were divorced on March 13, 1947.
James Milton Jonson and Donald Richard Johnson testified in instant case that said last mentioned deed was not delivered to either of them and that no consideration was paid by them for it. It was recorded in the Probate Office of Shelby County, Alabama on the 22nd day of June, 1950, which must be considered on the question of delivery and notice.
The mother of the Johnson boys (appellees) testified in the case before us that the deed was never delivered to her. The majority opinion in this case states, "There is no evidence that it (the deed) was ever delivered to the grantees." I do not agree with that statement. There are facts that show a delivery. The Johnson boys' (appellees) mother testified in the sale for division in 1950 that the boys owned the 1/100 interest in said life estate; and the trial judge in that case held they owned it and they were paid for it.
Morgan testified in that case the appellees owned it in the 1950 case. They could not have owned it without a delivery of the deed.
Leroy Morgan filed in the Circuit Court of Shelby County, Alabama in equity, on February 14, 1950, a bill of complaint against James Milton Johnson and Donald Richard Johnson seeking a sale of said property for a division alleging they each owned 1/200 undivided interest in said life interest and an undivided ½ interest in the remainder. Summons was issued by the register on said complaint and the Sheriff of Shelby County, Alabama made the following return:
"I have executed this summons this the 16th day of February, 1950, by serving a copy together with a copy of the bill of complaint on James Milton Johnson and Donald Richard Johnson and Lena Johnson, the parent having custody of the infants, James Milton Johnson and Donald Richard Johnson."
This case was numbered 3176 and will be referred to as "Case No. 3176." The complaint was amended to except 1.39 acres from the property originally described in the complaint.
Honorable Frank Head was appointed guardian ad litem for the minor respondents in the case number 3176, accepted said appointment and filed an answer and was present at the hearing. Testimony of Leroy Morgan and Lena Johnson was taken before the register, as commissioner, in said case.
Leroy Morgan testified in that case that he owned a life interest during the life of William T. Johnson less 2/200 undivided interest in said life interest which was owned by the said respondents which is evidenced by deed from him and his wife to said respondents. The deed was made an exhibit to his testimony. The respondents' mother also testified at said hearing that respondents each owned a 1/200 undivided interest in life interest of William T. Johnson and an undivided ½ interest in the remainder after death of William T. Johnson and that the 1/100 interest in the life interest of said William. *1258 T. Johnson was acquired by respondents by deed from Leroy Morgan and wife admitted in evidence. The case was submitted and the judge on March 14, 1950 entered a decree fixing interest of the parties, ordered lands sold and the register to hold a reference soon after the sale and report to the court the value of 1/100 interest and 99/100 interest during the life of William T. Johnson and the value of the remainder interest in said property. The register sold the land, held the reference and placed the value of the respondents' interest at $1,500.00 for their 1/100 interest in said life estate and their remainder interest and the conveyance to the respondents of 1.39 acres excepted from the description of the property in the original complaint by the amendment referred to. The court entered a decree confirming said report and sale and fixing the value of respondents' interest in accordance with the report, and ordering the register to execute a deed to Leroy Morgan, the purchaser, on the payment into court of the $1,500.00 for the respondents and the execution of said deed conveying the 1.39 acres to James Milton Johnson and Donald Richard Johnson. The register's deed to Morgan was admitted in evidence dated April 28, 1950. Leroy Morgan executed on May 1, 1950 and delivered to said respondents a deed to the 1.39 acres of land and paid the $1,500.00 into court. At the time of said sale William T. Johnson, the father of said respondents, was 41 years of age and James Milton Johnson was 18 years of age and Donald Richard Johnson was 13 years of age.
The mother of James Milton Johnson in February, 1950 filed a petition in Circuit Court in Shelby County, Alabama to remove his disabilities on non-age. He denies service of any papers in that case. The Sheriff's return shows he was served. He denies in instant case knowing anything about the decree removing said disabilities or that his disabilities had been removed. The records in the register's office shows he received $750.00 on May 10, 1950, after his disabilities of non-age were removed. He denied getting that money. He also testified in instant case that he knew nothing about a deed from Morgan to the 1.39 acres of land. He said he gave his brother Donald Richard Johnson a deed to his half of the 1.39 acres. He later admitted getting the deed from Morgan: that his mother showed it to him but said that he did not know whether it was in 1950 or not.
Donald R. Morgan testified in substance that he knew nothing of the sale for division; that he did not know Frank Head or Paul Luck; that he was not served with any papers in the sale for division case; that his brother gave him a deed to his part of the 1.39 acres and he built a house on it and lives there; that the 1.39 acres joined the 73 acres involved in this case; that he never saw a deed conveying to him and his brother a 1/100 interest in the land; that he did not know Frank Head was his guardian ad litem in the sale for division; that he did not know the land had been sold for a division until last year; that he never got the $750.00; that in the beginning his mother paid the tax on the 1.39 acres and when he got grown he began paying tax on it; that he did not know his mother was his guardian, although the records in the court shows that shortly after the sale for division she was appointed his guardian and received his $750.00 from the sale of land for a division. He further testified that he built his house on the 1.39 acres in 1961; that he was born June 9, 1936. At the time of the trial in 1950 he was 13 years of age and that at the time of the trial in the case before us in July, 1973 he was 37 years of age. He further testified that he learned that he and his brother had a deed from Morgan to the 1.39 acres in 1959; that he learned in 1963 that Art Rice's Realty was trying to buy the 73 acres; that he had known since he was 13 years of age that his mother got some money as part of a settlement with Morgan; that she told Morgan to deed it and "just put it in the boy's name." He later said he had known about the settlement since 1960 that involved the 1.39 acres.
On January 18, 1969 Leroy Morgan died, but had prior thereto conveyed the property in question to his wife Estelle W. Morgan *1259 on May 12, 1950. Mrs. Morgan on the 29th of June 1972 sold the lands involved in this case to respondents Duncan, Thomas and Gullian for $150,000.00, $43,000.00 of which was paid to her and a mortgage given to her for $106,500.00. The money paid to her was now in certificates of deposit.
The undisputed evidence in this case is that $3,000.00 was the fair and reasonable market value in 1950 of the land involved in this case; that since 1965 land values have risen rapidly to $2,000.00 to $3,000.00 per acre in that area.
Mrs. Lena Johnson also testified that she did not know until 1972 she had been appointed guardian of her son Donald Johnson; that she did not know she had petitioned the court to remove the disabilities of non-age of James Johnson. The guardianship petition was signed "Lena Johnson" and notarized. She denied her signature on many of the papers in the guardianship file. She admitted getting $750.00 that she used to put a roof on her house, for clothing and other things needed. That it was Donald's money. She also denied any knowledge or knowing anything about having the disabilities of non-age of James Milton Johnson removed. She also testified she asked for two acres of land but got a deed for less than two acres but could not explain why she got it or its purpose. This witness was a bookkeeper and had finished high school and went to business college. She testified that she knew the property was sold in 1950; that she told her sons at that time that the property had been sold; that they were living together. The following question was asked her and she gave the following answer:
"Q. But however old he was you are pretty sure that you talked about it with him (James Johnson) when you found out that their property was coming up through a court proceeding?
"A. I guess I mentioned it, sure."
She also testified that she did not know why she got the $750.00. She also denied giving or signing any testimony in the sale for division case in 1950.
She denied she signed a number of papers in each of the court cases: (1) the guardianship of Donald Johnson, (2) the sale for division case, and (3) the case to remove disabilities of non-age of James Milton Johnson, although the name "Lena Johnson" was signed to a number of papers in each case.
To illustrate certain features of the testimony given by James Milton Johnson the following recital will suffice:
He testified he was born January 15, 1932; that he was 18 years of age January 15, 1950; that he was 41 years of age when he testified in the trial of the case at bar in 1973; that he did not know Frank Head, attorney; that he had never been to Columbiana; that he was not served with any papers as shown by the Sheriff's return; that he did not know Paul Luck, an attorney; that Frank Head never talked to him about the property and never informed him he was his guardian ad litem; that if the Sheriff had come to serve the papers he knew what he looked like and would have known him but that the Sheriff did not do it; and that he did not know prior to 1972 that a hearing was held where testimony was given to sell the land.
He testified in that manner notwithstanding the following facts:
1. The Sheriff's return of service.
2. He received $750.00 and a deed from Morgan to the 1.39 acres of land from the proceeds of sale and has kept same for more than 22 years.
3. He sold his interest in the 1.39 acres to his brother.
4. He was 40 years of age and had lived in Shelby County almost his entire life and had a ninth grade education.
5. He knew the Morgans were in possession and had tried to sell it.
6. He was the son of Lena Johnson who testified in the case for sale of the lands for division that she had used part of the proceeds of the sale for division to roof the house where he lived with his mother.
7. And the other circumstances in the case.
*1260 To meet the ends of brevity James Milton Johnson and Donald Richard Johnson, plaintiffs in the trial court and appellees here, will be referred to as the Johnsons.
The vital question in this case is not merely the question of whether the deed from the Morgans conveying 1/100 interest in the life estate involved in this case was delivered to the Johnsons so as to give the trial court jurisdiction in the sale for division in 1950. The vital question is: can the Johnsons take oral testimony in an action filed more than 22 years later and set aside a judicial decree, a judicial sale, and a register's deed made under orders of the court, all of which has been a matter of record during all of said years under the circumstances involved in this case? To answer that question in the affirmative in the light of the lapse of time and the incredible and unbelievable answer, to question involving a material fact in the case before us on the part of the Johnsons and their parents coupled with the fact that at the time of the trial of this case almost every witness, if not every witness, who may have been called upon to rebut said testimony had they been living, were dead would be unjust and misapplication of the law. The defense in this case is not an effort to dispossess the owner of a life estate. The contention is that there is no life estate.
The trial judge in the 1950 sale for a division was dead. Honorable Frank Head, an attorney and guardian ad litem for the Johnsons, in 1950 sale for division was dead. Honorable Paul Luck, attorney for Morgan, the plaintiff in said sale for division was dead. The register at the time of sale for division who took the testimony in said case was dead. The probate judge that appointed Lena Johnson the guardian of Donald Richard Johnson in 1950 was dead. The Sheriff who served papers in sale for division and the proceedings to remove disabilities of non-age of James Milton in 1950 was dead. All of whom were dead at the time complaint in instant case was filed in 1972.
All of those deceased persons, had they been living at the trial of this case in July, 1973, could have testified to material and vital facts in that trial.
The complaint in the case before us is an effort to make an attack on the judgment and decree of the court in the sale for division case rendered on March 14, 1950, and the decree confirming said sale. Such attack if it be a collateral attack may only be made for invalidity apparent and affirmatively appearing on the proceedings.
The opinion in Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820 states:
"So far as the bill seeks to vacate the decree for invalidity, apparent on the proceedings, arising from an absence of jurisdictional averments in the bill, and absence of jurisdiction of the person, the right is not defeated by the rule of prescription. Grier v. Campbell, 21 Ala. 327; Pettus v. McClannahan, 52 Ala. 55, 58; Buchanan v. Thomason, 70 Ala. 401; Baker v. Barclift, 76 Ala. 414; Sweeney v. Tritsch, 151 Ala. 242, 44 So. 184; Martin v. Martin, 173 Ala. 106, 107, 55 So. 632; Anthony v. Anthony, 221 Ala. 221, 128 So. 440. But to that extent, the bill is a collateral attack, and the right is not dependent upon error nor irregularity, but an absence of jurisdiction apparent upon the proceedings. Smith v. Gibson, 191 Ala. 305, 68 So. 143; Martin v. Martin, supra; Anthony v. Anthony, supra.

"Since a judgment against an insane person is not void, when insanity does not affirmatively appear, it cannot for that reason alone be collaterally attacked. 32 Corpus Juris 791. So a want of representation by guardian or guardian ad litem does not render the decree void on such attack, when the record does not on its face show the insanity. 32 Corpus Juris 789. But the judgment is subject to vacation on that ground as for fraud, Cunningham v. Wood, 224 Ala. 288, 140 So. 351, or collusion, Ex parte Edwards, 183 Ala. 659, 62 So. 775.
"The proceedings here under consideration do not show the insanity of this complainant, and therefore the decree is not void on that ground alone. Any infirmity *1261 thereby occasioned is subject to the bar of prescription."
In the case before us, if the deed from Morgan to the Johnsons in 1950 conveying a 1/100 interest in the life estate was without consideration and was not delivered, such fact does not appear on the record in the case for a sale for division. If such facts exist at all their existence would require testimony dehors the record. Therefore a collateral attack cannot be made against the judgment and decree because of such facts or the assertion thereof. If said judgment or decree is void on the face of the record a collateral attack on it would not be defeated by the rule of prescription.
"No lapse of twenty years, nor any other period of time, can cure a decree void upon the face of the record. A mere nullity, its invalidity may be set up at any time."
Anthony v. Anthony, 221 Ala. 221, 128 So. 440.
The judgment in the sale for division case in 1950, was not void on the face of the record. Such a judgment may be attacked for fraud not appearing of record. When that is done laches or prescription may be set up. The case before us is subject to prescription.
In Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820 the court said:
"It appears therefore that the question of importance depends upon the right to have the decree of divorce annulled for (a) fraud, or for (b) invalidity apparent on its face. The bill was filed in this suit January 26, 1934, and the decree of divorce was entered December 18, 1903, and he and Lula Lee were married January 18, 1904, and he died December 5, 1932. So that the bill was filed thirty years and one month after the decree was entered, and thirty years after he married Lula Lee, having lived with her as his wife twenty-nine years before he died, and it was not filed until after his death.
"The attack by demurrer on the bill, among other grounds, is that it shows that the right to vacate the divorce decree for fraud is barred by the rule of prescription of twenty years, and that it does not on its face show invalidity.
"Since an early period in this state, prescription has been in force, created by the chancery court as a rule of repose, and it is thus stated in McArthur v. Carrie, 32 Ala. 75, 88, 89, 70 Am.Dec. 529, by Stone, J.: `In this, as in most of the States of this Union, there is a growing disposition to fix a period, beyond which human transactions shall not be open to judicial investigation, even in cases for which no statutory limitation has been provided. * * * By common consent, twenty years have been agreed on, as a time at the end of which many of the most solemn transactions will be presumed to be settled and closed.' And in Garrett v. Garrett, 69 Ala. 429, it is said: `So sweeping is the principle in its scope and operation, that the presumption raised by it is not arrested or rebutted by the proof of any disability, such as infancy or coverture, on the part of the distributees by whom a trustee or administrator has been cited to settlement.' In Matthews v. McDade, 72 Ala. 377, 388: `Twenty years is a period of time beyond which the courts are indisposed to permit past human transactions to be disturbed by judicial investigation.' McArthur v. Carrie, supra; Garrett v. Garrett, supra; Baker v. Prewitt, 64 Ala. 551; Street v. Watts, 202 Ala. 622, 81 So. 564; Long v. Parmer, 81 Ala. 384, 1 So. 900; Bozeman v. Bozeman, 82 Ala. 389, 2 So. 732; Wilson v. Holt, 83 Ala. 528, 3 So. 321, 3 Am.St.Rep. 768; Alabama C. & C. Co. v. Gulf C. & C. Co., 171 Ala. 544, 54 So. 685; Scott v. Scott, 202 Ala. 244, 80 So. 82. Again it is said in Snodgrass v. Snodgrass, 176 Ala. 276, 280, 58 So. 201, 202, that `the consensus of opinion in the present day is that such presumption is conclusive,' and quoting from an earlier case, `the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice *1262 in them, that it conduces to peace of society and the happiness of families, "and relieves courts from the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible." Harrison v. Heflin, 54 Ala. 552, 563, 564; Greenlees v. Greenlees, 62 Ala. 330; Semple v. Glenn, 91 Ala. 245, 260, 261, 6 So. 46, 9 So. 265, 24 Am.St.Rep. 894; Roach v. Cox, 160 Ala. 425, 49 So. 578, 135 Am.St.Rep. 107.
"The rule now creates a conclusive bar, Roach v. Cox, supra; Oxford v. Estes, 229 Ala. 606, 158 So. 534, and is not affected by the circumstances of the situation, that is to say, whether truth and justice are thereby obscured, or by the death of parties or destruction of testimony, and conduct based upon the apparent situation, or the age, state of mind, or status of responsibility. These are circumstances which are considered in respect to laches but not prescription. Oxford v. Estes, supra; Courson v. Tollison, 226 Ala. 530, 147 So. 635; Ashurst v. Peck, 101 Ala. 499, 14 So. 541.
"But such circumstances only give a reason for the adoption of the twenty-year period of prescription, and are not necessary to exist that its operation shall be complete. McCartney v. Bone, 40 Ala. 533; Patterson v. Weaver, 216 Ala. 686, 114 So. 301; Ashurst v. Peck, 101 Ala. 499, page 509, 14 So. 541; 21 Corpus Juris 212. It is not dependent upon statute, though it is there recognized. Section 8960, Code.
"This being in the nature of a bill of review, so far it charges fraud in procuring the decree, the ordinary statute of limitations is three years, by analogy to section 6608, Code, as limited by the one year statute, section 8966, Code. Nichols v. Dill, 222 Ala. 455, 132 So. 900; Manegold v. Beavan, 189 Ala. 241, 66 So. 448; Gordon v. Ross, 63 Ala. 363.
"But no disability shall extend the period beyond twenty years. Oxford v. Estes, supra; Greenlees v. Greenlees, supra, 62 Ala. 330, page 333; Harrison v. Heflin, supra, 54 Ala. 552, page 563.
"But it is urged that section 8966, Code, does away with the doctrine of prescription entirely as against insane persons who remain throughout that period. That section has continued in the Code since we have had one. Throughout all the years of this state's history, it has not been suggested in the opinions of this court, so far as we know, that the doctrine was thereby destroyed as to those who remained insane throughout that period. Prescription is not statutory, but a salutary principle of equitable origin, whose purpose has not been questioned by judicial construction, nor changed by statute. And we have consistently adhered to the idea that it operates alike on all, regardless of the status or condition of the parties. It is broader than the statute of limitations. Patterson v. Weaver, 216 Ala. 686, 114 So. 301, and not affected by it.
"So that on this question, it is immaterial that complainant has been all the time insane, and not subject to the statute of limitations, nor to the claim of laches; nor that Lula Lee, who was the apparent wife of decedent for twenty-nine years, may have known that the decree was fraudulent."
You will notice that doctrine of prescription is not destroyed as to those who remain insane throughout the entire period but that it operates alike on all regardless of the status or condition of the parties.
It was said in the Wilkerson case, supra, that it was not subject to the statute of limitations or laches because she was insane during all of the time. The court held that that did not defeat prescription.
James Milton Johnson and Donald Richard Johnson were not insane or under any other disability during all of the time from 1950 to 1972. The disabilities of non-age of James Milton Johnson were removed in 1950 and he became sui juris and collected his share of the proceeds of the sale for division. Donald Richard Johnson became 21 years of age June 9, 1957. The case before us was filed 22 years after James *1263 Milton Johnson became sui juris and more than 14 years after Donald Richard Johnson became 21 years of age.
The case before us could have been brought at least the next day after the time for appeal expired in the sale for division case in 1950 by James Milton Johnson and the guardian of Donald Richard Johnson. Donald Richard Johnson could have brought it when he became 21 years of age in 1957.
This action filed in 1972 was barred by prescription.
Attention is now directed to laches as a bar.
In Meeks v. Meeks, 245 Ala. 559, 18 So.2d 260, the court had this to say:
"* * * The rule of laches is well understood and stated on authorities by this court in 21 Corpus Juris, p. 210, § 211, as follows:
"`Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; [Montgomery Light Co. v. Lahey, 121 Ala. 131, 136, 25 So. 1006]. * * *

"`A stale demand or claim in its proper sense is one that has for a long time remained unasserted; one that is first asserted after an unexplained delay of such great length as to render it difficult or impossible for the court to ascertain the truth of the matters in controversy and do justice between the parties, or as to create a presumption against the existence or validity of the claim, or a presumption that it has been abandoned or satisfied. [Cole v. Birmingham Union R. Co., 143 Ala. 427, 39 So. 403; Ashurst v. Peck, 101 Ala. 499, 14 So. 541]. * * *
"`212. B. As Constituting a Defense. In General. It is inherent doctrine of equity jurisdiction that nothing less than conscience, good faith, and reasonable diligence can call courts of equity into activity, and that they will not grant aid to a litigant who has negligently slept on his rights and suffered his demand to become stale were injustice would be done by granting the relief asked. It is therefore a general rule that laches or staleness of demand constitutes a defense to the enforcement of the right or demand so neglected. [Gayle v. Pennington, 185 Ala. 53, 58, 64 So. 572; Walshe v. Dwight Mfg. Co., 178 Ala. 310, 59 So. 630; Alabama Coal, etc., Co. v. Gulf Coal, etc., Co., 171 Ala. 544, 550, 54 So. 685 (quot Cyc); Espy v. Comer, 76 Ala. 501; Abernathy v. Moses, 73 Ala. 381; Johnson v. Johnson, 5 Ala. 90]. * * * The doctrine is based in part on the injustice that might result from the enforcement of long neglected rights, and the difficulty, if not the impossibility, of ascertaining the truth of the matters in controversy and doing justice between the parties, and in part on grounds of public policy, its aim being the discouragement, for the peace and repose of society, of stale and antiquated demands. [Johnson v. Toulmin, 18 Ala. 50, 52 Am.Dec. 212]. The rule that the enforcement of a right may be barred by laches is an application of the maxims, vigilantibus, non dormientibus, subveniunt leges, he who seeks equity must do equity, and he who comes into equity must come with clean hands. [Montgomery Light Co. v. Lahey, 121 Ala. 131, 25 So. 1006]. * * *'
"A court of equity will not give force and effect to the appellee's claim when death has removed from the scene and closed the lips of the two important witnesses to the transactions so vital to appellant, widow, and owner of the lands. Thompson v. Suttle, 244 Ala. 687, 15 So.2d 590."
In Meeks v. Meeks, supra, the plaintiff had waited 14 years to bring the action. The appellees in the case at bar waited 22 *1264 and 15 years respectively after attaining majority to file the action.
In Meeks v. Meeks, supra, in defining laches the court, in part, said:
"`* * * More specifically, it is inexcusable delay in asserting a right; and implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity;'" 21 Corpus Juris, p. 210, § 211.
Laches is there, in part, defined as an "implied waiver arising from knowledge of existing condition."
Darden v. Meadows, 259 Ala. 676, 68 So.2d 709 is a statement of the law with reference to the knowledge required as an element of laches, and the death of an important witness. We here quote from said opinion the following:
"It is to be observed that relief is sought against a transaction occurring more than thirty years before the filing of this bill, placing the burden upon complainant by this bill to excuse so long a delay. Chambless v. Kennamer, 214 Ala. 293, 107 So. 908, and the question can be raised by demurrer. Ussery v. Barrow, 238 Ala. 67, 188 So. 885; Drummond v. Drummond, 232 Ala. 401, 168 So. 428.
"The following statements, omitting cases cited, are found in Salvo v. Coursey, 220 Ala. 300, 124 So. 874, 875:
"`The rule of laches is well understood. It precludes relief where, as the result of delay, the original transactions have become so obscure by lapse of time or loss of evidence as to render it difficult or hazardous to do justice or danger of doing injustice. * * * This rule has application where the matter is not pressed until after the death of adverse party or material witness, or loss or destruction of the evidence that could have explained or denied the contentions made by adverse interest.'
"As stated in Gayle v. Pennington, 185 Ala. 53, 64 So. 572, 577:
"`Laches alone is sufficient to bar equitable relief, especially where it has been so long continued as to render relief sought doubtful, uncertain, unfair, or unjust. Cole v. Birmingham Union Ry. Co., 143 Ala. 427, 39 So. 403.'
"The Court in Hauser v. Foley & Co., 190 Ala. 437, 67 So. 252, 253, said:
"`The true doctrine concerning laches has never been more concisely and accurately stated than in the following language of an able living judge: `Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but, when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' Stiness, J., in Chase v. Chase, 20 R.I. 202, 37 A. 804." 5 Pom.Eq.Jur., § 21.
"`Laches, as has been well said, does not, like limitation, grow out of the mere passage of time, but it is founded upon the inequity of permitting the claim to be enforcedan inequity founded upon some change in the condition or relation of the property, or the parties. Galliher v. Caldwell, 145 U.S. 368 (12 S.Ct. 873, 36 L.Ed. 738)."'
"The amendment to the bill attempted to excuse or explain away laches. The following quotation from the case of Scruggs v. Decatur Mineral & Land Co., 86 Ala. 173, 5 So. 440, appears in Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 94 So. 606, 612:

*1265 "`Laches will not be imputed, until after discovery of their rights. But mere ignorance of right, without excusing or explaining its reasonable continuance, is insufficient. "Ignorance of right in the party complaining, there being no more than passiveness, mere silence on the part of his adversary, cannot be ingrafted as an exception on the statute of limitations, without a destruction of its wide policy, and without an encouragement of a mere negligence." Underhill v. Mobile Fire Department Insurance Company, 67 Ala. 45; James v. James, supra [55 Ala. 525]. When the case stated is prima facie within the bar of the statute, or offensive to the rule against the enforcement of stale demands, the complainant must positively and distinctly aver the facts and circumstances which constitute an exception to the statute, or which excuse or explain the long acquiescence and delay. Philippi v. Philippi, 61 Ala. 41.'
"Complainant seems to rely upon ignorance as an excuse in the instant case. But, as shown above, ignorance alone does not excuse laches. If facts were apparent to complainant so as to put him on inquiry concerning the names of the grantees in the deed, and he failed to inquire, then this lack of reasonable diligence precludes the availability of this excuse that he did not discover that his wife was a co-grantee until 1950. We regard the following circumstances in their total effect as making it apparent that complainant has not excused himself from the application of the doctrine of laches: construing the allegations most strongly against him, the deed was delivered to him in 1919, he accepted it and placed it in his trunk and in 1947 he `noticed that it was not recorded' and he then had it recorded. We have noticed the outside of the photostatic copy of the deed which was made Exhibit "A" to the amended bill. To us, it is inconceivable that complainant could have noticed that the deed was not recorded and failed to notice his wife's name printed thereon in letters as large as any other printing on that particular page, there being only nine words on the page other than his name and his wife's name. Again the exercise of reasonable diligence at this time would have put him on notice as to the names of the grantees in the deed. But his wife was still living at that time and did not die until August 1948, and complainant avers that he discovered the mistake in 1950.
"This Court said in Meeks v. Meeks, 245 Ala. 559, 18 So.2d 260, 267:
"`A court of equity will not give force and effect to the appellee's claim when death has removed from the scene and closed the lips of the two important witnesses to the transactions so vital to appellant, widow, and owner of the lands. Thompson v. Suttle, 244 Ala. 687, 15 So.2d 590.'
"Here death has removed the wife, the most important witness for the respondents. And in Moragne v. Moragne, 234 Ala. 660, 176 So. 455, 456, the Court, speaking through Chief Justice Anderson, said:
"`Courts should use great caution and require a high degree of proof in cases of reformation of written instruments. Johnson v. Sandlin, 209 Ala. 430, 96 So. 223. * * * This rule is especially salutary in cases like this one where death has sealed the lips of the party against whom relief is sought.'"
The plaintiff, in the case at bar, received the proceeds of the sale for division which included the title to 1.39 acres of land. The youngest plaintiff bought his brother's one-half interest in that land, built his home thereon and has for many years lived in that home. Those facts alone are enough to have put him on inquiry which, if reasonably perused, would have given him complete knowledge of all the facts. The oldest Johnson became sui juris in 1950, and signed for and received $750.00 of the proceeds of the sale for division which was also alone sufficient to put him on inquiry. The Sheriff served the complaint in sale for division on him. Therefore, neither may be *1266 excused because of a lack of knowledge. As a matter of fact their claim of a lack of knowledge in view of all of the evidence is inconceivable and unbelievable.
Furthermore, as to knowledge as an element of laches, we quote from Alabama Coal & Coke Co. v. Gulf Coal & Coke Co., 171 Ala. 544, 54 So. 685, the following:
"`Whenever ignorance of fact is urged as an excuse for delay, the general doctrines on the subject of knowledge, actual and constructive, may be said to apply. One must have been diligent and have made such inquiry and investigation as the circumstances reasonably permitted or suggested. Means of knowledge of facts sufficient to suggest inquiries which if made would lead to knowledge of the facts in question is sufficient to charge one with notice of the latter facts. The known facts must, however, point with some directness toward the unknown, although a mere suspicion of the crucial facts may raise a duty to inquire.
"`Equity as well as law charges a party with notice of public statutes, with such knowledge as might be gained by an inspection of the records of land title, where such inspection is required by law, or suggested by ordinary prudence, and with knowledge of facts disclosed by the records of judicial proceedings to which he was party, but not of proceedings to which he was not a party and which did not affect him. As a party is generally charged with the laches of his privies or agents, it follows that knowledge of an ancestor will be imputed to an heir, that of a plaintiff to his coplaintiff, and that of an attorney to his client. The knowledge of others who might have sued but did not may raise the presumption of invalidity against plaintiff in spite of his own ignorance of the transaction. A plaintiff seeking to excuse delay by ignorance of facts must allege such ignorance in his bill, and it is generally held that he must disclose with particularity every element creating the excusethat the facts could not have been discovered by the exercise of the due diligence, and just when and how the discovery was made. Often, however, the burden of proving knowledge is cast on defendant.' 16 Cyc. 171-173.
"`Courts of equity, while sometimes bound by and at other times following the analogy of statutes of limitation, also act independently of such statutes, refusing relief to parties who have slept upon their rights or have been negligent in asserting them. Negligence in the prosecution of the suit after its commencement may bar relief. A party himself diligent may be precluded from relief by the negligence of others, as a grantee by the negligence of his grantor, a personal representative by that of the decedent, or joint tenants by that of one of their number.' 16 Cyc. 150."
The laches of one plaintiff may bar another plaintiff.
In the Meeks case, supra, it is held:
"`215. * * * Generally speaking plaintiff is barred from relief by the laches of one with whom he stands in privity, as a grantee by the laches of his grantor, an assignee by that of his assignor, a personal representative by that of the decedent, and joint tenants by that of one of their number. [Alabama Coal, etc., v. Gulf Coal, etc., 171 Ala. 544, 550, 54 So. 685. * * * James v. James, 55 Ala. 525].' [Brackets supplied from citations of text.] See also 30 C.J.S. Equity §§ 112, 113." 21 Corpus Juris, p. 210, § 211.
James Milton Johnson and Donald Richard Johnson were joint tenants in common. The actual or constructive knowledge of said parties is in my judgment without question. That is especially true of the oldest of the two. James Milton Johnson knew or should have known the facts which gave rise to action he filed more than 22 years later. He is barred both by prescription and laches. Donald Richard Johnson, his brother, and a joint tenant in common stands in privity with him and is also barred from relief by laches.
The writer of this opinion is not overlooking the fact, as heretofore stated, that complaint *1267 may be brought to vacate a judgment or decree of a court of competent jurisdiction for fraud in the procurement of the judgment and extrinsic to matters tried and determined, but such fraud includes false and fraudulent statements necessary to invoke courts power or jurisdiction to render the judgment or decree. Hooke v. Hooke, 247 Ala. 450, 25 So.2d 33. However, if the fraud does not appear on the face of the record and requires proof dehors the record it is but a situation which gives rise to an action and, like other actions, may be barred by prescription and laches in equity.
In the case before us, one of the things that had to be determined by the trial court in the sale for division in 1950 was the ownership of the 1/100 interest in the life estate in question and incidentally the validity of the deed from Morgan to the Johnson boys. The decree held that said Johnsons were the owners of said interest and they received its value from the proceeds of the sale. That judgment and the record in that cause should have considerable weight as against their denial that the deed from Morgan to them was not delivered.
In Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820, appears this statement:
"But in construing proceedings in divorce cases, though the court is of statutory and limited jurisdiction, a construction will be given that will sustain their validity, if it is reasonable, and all reasonable intendments and presumptions indulged in their favor. Authorities last supra; Smith v. Gibson, supra; King v. Kent, 29 Ala. 542; Martin v. Martin, supra."
When we search for fraud in this case it must be remembered that in the trial of the sale for division in 1950 the Johnsons were wards of the trial judge; that they were represented by a guardian ad litem; and that their mother was also present and testified. Thus those three charged with either a legal or moral duty to protect them and preserve their rights, were present. That also should be given considerable weight in considering whether the decree should be vacated. A holding to vacate the decree is a left-handed way of saying those three: the trial judge, the guardian ad litem and the mother did not perform their duties and to say so by giving controlling verity to incredible and unbelievable testimony on many material facts on the part of the complainants and their witnesses. All of the above, coupled with the death of so many of the important witnesses who, if living, could have contradicted the Johnsons and their witness, adds to their burden in their effort to defeat laches, and lessens the burden of the defendants to defend because of laches.
Mr. Morgan became the purchaser in the sale for division. The register's deed conveyed the property to him. He later conveyed the lands to Mrs. Morgan and some time before the commencement of this action she conveyed the lands to S. C. Duncan, Woodrow Thomas and Paul Gilliam, Jr. for a consideration of $150,000.00. Those purchasers, without any knowledge of the claim of the Johnsons, bought said lands and paid $44,000.00 of the purchase price in cash to Mrs. Morgan and gave a mortgage for the balance. I see no facts to put them on inquiry dehors the record of their chain of title. Mrs. Morgan was in the exclusive possession of said land and she alone assessed and paid the taxes on the same. If the Johnsons prevail in this case these purchasers could suffer irreparable financial injury. Such injustice and injury as a commanding element of laches. Mott v. Helmes, 246 Ala. 331, 20 So.2d 461, states the rule in this manner:
"* * * This is a rule of courts of equity applied to a lack of diligence and good faith in invoking the court's jurisdiction to the prejudice or disadvantage of a defendant. * * *"
The majority opinion in its efforts to show that the action is not barred by estoppel, the statute of limitations, laches or prescriptions dwells upon the fact that one holding a remainder interest in lands has no right to dispossess the owner of a life estate. With that I agree, but the present case is not an attempt to do so. If the complainants-appellees succeed in this case, *1268 all parties would be in the same position they were in before the sale for division with Mr. Morgan or his grantee owning the life estate in question with the right of possession and the Johnson boys owning the remainder interest with their right of possession delayed until the death of their father.
So the case has nothing to do with a remainderman's action to dispossess a life tenant. It is an action to set aside a court decree for alleged fraud and it came into being when the decree became final. I have been unable to find any law that says the Johnson boys (appellees) had to delay bringing this action until the death of their father, whose death would terminate the life estate. If such a delay is required they would have no right to bring the action now, for the father is living.
Mrs. Morgan is still in possession of the property. If she is not the owner in fee simple she is the owner of the life estate and is not subjected to be dispossessed. This case is not an attempt to do so.
Furthermore, the case is not one on the part of the defendants-appellants to secure a decree holding that the remaindermen by reason of lapse of time have lost their remainder interest. The appellants contend the appellees lost their interest in the sale for division. It is the appellants' contention that what the appellees lost by reason of the lapse of time, laches, or prescription is the action to set aside the court decree, and the register's deed in the sale for division for fraud, an entirely different matter.
Cases are cited in the majority opinion which hold that under some circumstances a remainderman not in possession must file a bill to remove a cloud on his title. W. T. Smith Lumber Co. v. Barnes, 259 Ala. 164, 66 So.2d 77. Sound reason in my judgment dictates that the case before us is a case in which such action is required by the remaindermen.
This Court in Moss v. Davitt, 255 Ala. 513, 52 So.2d 515, 518, said:
"The train of events on which the complainants rely began more than 20 years prior to the institution of this suit. This court has often held that claims of property rights which have been permitted to slumber without assertion or recognition for 20 years are presumed to have no legal existence. Jellerson v. Pettus, 132 Ala. 671, 32 So. 663; Black v. Pratt Coal & Coke Co., 85 Ala. 504, 5 So. 89; Kidd v. Borum, 181 Ala. 144, 61 So. 100; Oxford v. Estes, 229 Ala. 606, 158 So. 534. But some of the events in the train of events occurred less than 20 years before the institution of this suit. In such a situation laches in the sound discretion of the court can take up where prescription leaves off. Cook v. Castleberry, 233 Ala. 650, 173 So. 1; Courson v. Tollision, 226 Ala. 530, 147 So. 635. See 30 C.J.S. Equity § 114, page 526.
"But it is argued that under § 42, Title 7, Code of 1940, there is no bar until one year after the discovery of the fraud. It is true that absence of notice affects laches. Norwood v. American Trust & Savings Bank, 216 Ala. 602, 114 So. 220. But facts constituting fraud are deemed discovered when they should have been discovered in determining whether the action therefor is barred. Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286. In Butler v. Guaranty Savings & Loan Ass'n, 251 Ala. 449, 37 So.2d 638, 639, this court said: "Fraud is deemed to have been discovered when it ought to have been discovered. Facts which provoke inquiry in the mind of a man of reasonable prudence, and which, if followed up, would have led to a discovery of the fraud, constitute sufficient evidence of discovery." * * *'
"It is without dispute that the mortgage in favor of Jacob L. Marx was recorded in 1917. Its transfer to Mrs. Ida Davitt was recorded in 1922. It was foreclosed in 1933 and a foreclosure deed filed for record on June 29, 1933. There is evidence tending to show that after the foreclosure John E. Davitt and Louis Davitt went into possession of the property and were in possession in person for at least two years and since that time their agents have been in possession. The testimony *1269 tends to show that Howard Moss in 1942 or 1943 was apprised of the facts in the case when bankruptcy proceedings were instituted against Mrs. Ida Davitt. He handled all business affairs for the estate since the death of C. L. Moss."
Because of the delay and lapse of time in bringing the action in the case before us the conclusion arrived at by the trial court was at best conjectural and the original transaction had become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult, if not impossible, to do justice. Therefore, laches precludes relief.
Under the holding of the majority opinion the title to real estate in Alabama, if one of the links in the chain of title has been a sale for division and a minor is involved, is rendered unstable. An abstractor could not certify good title from the records in the courthouse in such case. The title is made subject to oral testimony of the most questionable character after all the witnesses who could sustain the title have been silenced by death. That opinion says in substance that when death has sealed the lips of many, one may testify and it matters not how long the lapse of time or how unjust the results may be or how many or how much innocent purchaser for value may suffer. The majority opinion also has completely ignored the rights of such purchasers. The stability of the recorded title to real estate is a matter of tremendous importance and should not be lightly disturbed, especially so after the lapse of so many years and the loss of evidence.
It is my opinion that the action in this case is barred both by prescription and laches, and the case should be reversed and rendered.
NOTES
[*] Upon original submission, the Chief Justice and Associate Justices recused themselves. Thereupon, pursuant to Section 6.10 of Constitutional Amendment No. 328 (New Judicial Article), the Chief Justice appointed Supernumerary Circuit Judge Leigh M. Clark as Chief Justice and Supernumerary Circuit Judges L. S. Moore and W. J. Haralson and Circuit Judges Eugene W. Carter, Eris F. Paul, A. B. Cunningham and Ingram Beasley as Associate Justices, to hear and determine the cause on appeal.
[1] Whether the sale of the land would be for the best interest of the minors was not an issue in Case No. 3176, and no judicial determination was ever made in the case that a sale would be
[2] Substantially all of the issues between the parties on appeal were presented to the trial court not only on the submission for final decree but also by the defendants' demurrers to the bill of complaint as amended, which were overruled, testing the sufficiency of the averments to show the general equity of the bill and challenging the bill as showing on its face that a bar had occurred since the accrual of any right of action. It seems that all parties elect to make the evidence, in connection with the pleadings, rather than the pleadings standing alone, the field of contest. To reach a correct result, it is not necessary for us to extend our consideration to another area.
[3] Appellees incidentally contend that the deed was "forged or back dated. . . with a changed description," but we do not so determine, and the record does not convince us thereof, even though it does not give us any basis for determining that it was in the possession of anyone other than Mr. Morgan from the time of its execution and acknowledgment to the time of its recordation.
[4] Our conclusion is free of any reflection upon the unquestionable ability and probity of the judge, other court officials and all attorneys appearing in Case No. 3176.
[5] The author refers to right of entry in case of waste and the right of inspection to protect the remainder interest as qualifications for the right of the life tenant to undisturbed possession.